ANGELO FIORILLO, Appellant, *v.* CENTRAL INSURANCE COMPANY OF BALTIMORE, Respondent.

ANGELO FIORILLO, Appellant, *v.* UNITED STATES FIRE INSURANCE COMPANY OF NEW YORK, Respondent.

ANGELO FIORILLO, Appellant, *v.* NATIONAL LIBERTY INSURANCE COMPANY OF AMERICA, Respondent.

Third Department, December 28, 1943.

*Michael LeSawyer,* attorney for appellant.

*Affeld, Sowers & Herrick,* attorneys (*Frank Sowers* and *James H. Black* of counsel), for respondents.

CRAPSER, J. The above actions were brought to recover the sum of $1,060.69 on three separate policies of fire insurance.

The defendants admitted the issuance of the policies of insurance and that a fire occurred in the premises on June 7, 1941, and in substance denied the remaining allegations in the complaint and set up separate defenses of fraud in the filing of the proof of loss and the second defense that the plaintiff violated the provisions of the policies in that he permitted or kept petroleum products in the premises which were not usual or incidental to the occupancy. The actions were tried together in the Supreme Court, Columbia County, and the plaintiff now appeals from said judgments.

The actions were brought to recover on separate fire insurance policies issued by the defendants according to their proportionate liability and which policies were in effect at the time when the plaintiff suffered fire loss to the insured premises. The defendants refused to pay the loss according to the terms of their policies. The policies covered the premises in the city of Hudson consisting of a three-story brick building which had three stores on the first floor, four flats on the second floor and five flats on the third floor. There were three occupants of the third floor but the second floor was vacant at the time of the fire.

The property was purchased by the plaintiff in April, 1939, and about August 1, 1939, a secondhand furniture store was started by the plaintiff's son associated with the plaintiff in the three stores on the ground floor. A considerable quantity of furniture and materials kept in the secondhand store were

accumulated by the plaintiff's son who conducted the store from August, 1939, to about October 1, 1940, when he was inducted into the United States Army. The plaintiff's wife died shortly before the son's induction and after the son's induction the plaintiff attempted to carry on the business for a time but he was not regular in his attendance at the store and there were days when it was not open and he went there only on occasions when called by someone who wanted to purchase something contained in the store.

In the late afternoon of the day of the fire the plaintiff went to the store to get some cord. He left the store and went home and from there to a place in another part of the city of Hudson where he was at the time the fire occurred around nine o'clock at night.

The policy provided that the building was withdrawn from the coverage while gasoline was kept, used or allowed on the premises without agreement providing therefor, the policy provision reading: '' Unless otherwise provided by agreement in writing added hereto this Company shall not be liable for loss or damage occurring * * * (d) * * * while (any usage or custom to the contrary notwithstanding) there is kept, used or allowed on the described premises * * * benzine, gasoline, naphtha or any other petroleum product of greater inflammability than kerosene oil, gunpowder exceeding twenty-five pounds, or kerosene oil exceeding five barrels.''

By rider the policy granted the insured the following privilege: '' Work and Materials Clause — Permission is hereby granted for such use of the premises as is usual and incidental to the occupancy as herein described and to keep and use all such appliances, devices and materials (including gasoline and such other materials as are prohibited by the printed conditions of this policy) in such quantities as are usual and incidental to such occupancy.''

The evidence showed that at the time of the fire on June 7, 1941, approximately four gallons of gasoline were on the premises in a closet.

One of the defendant's witnesses testified that at the time of the fire the plaintiff was questioned as follows: '' The chief asked him — he said, ' Did you keep any gasoline in this store here? ' And he said, ' No.' He asked him if he stored any in the store to use it in his business, and he said, ' No.' Then he said, ' Did you ever have this gasoline in this closet here? ' and he said, ' No.' So he opened the door and he said, ' What is that? ' So he said, ' It looks like gasoline.' ''

The court properly charged the jury that the burden of proof was upon the defendants to show that the plaintiff when he presented his proof of loss, stating that he did not know the origin of the fire, presented a false statement.

" It was one of the conditions of these policies that gasoline should not be stored or kept in the premises. There was an exception provided to those conditions by what is known as a rider in the policy and that exception gave permission to keep or store gasoline on the premises under certain conditions: * * * Gasoline was permitted to be kept in the premises in such quantities as are usual and incidental to such occupancy. Now I charge you that even though you do not find any fraud to have occurred in the proof of claim, the plaintiff before he can recover must satisfy you by a fair preponderance of the credible evidence that the quantity of that gasoline kept there on the premises was such as would be usual and incidental to the occupancy of the premises.

" Prior to October of 1940, the premises in which this gasoline was found was used, as I recall the proof, as a secondhand furniture business or secondhand business generally; that after the plaintiff's son had joined the army that the plaintiff himself went there occasionally; that especially from December on, or January, 1941, to June, he did not regularly use the premises, except for occasional visits there, and, as I understand it, did not carry on the business. Now, he, first of all, has the burden of satisfying you that the quantity of gasoline there was usual for the kind of occupancy and use that he made of those premises; and if he does not satisfy you that that quantity of gasoline was usual and incidental to the kind of occupancy and use that he made of those premises, then he cannot recover because the policies permit gasoline to be kept there only when in quantities usual and incidental to the occupancy then being made of the premises."

An exception was duly taken to this charge. This charge erroneously stated the law and placed the burden upon the plaintiff rather than upon the defendants and requires a reversal of the judgments. (*Porter* v. *Traders' Ins. Co.*, 164 N. Y. 507; *Slocovich* v. *Orient Mut. Ins. Co.*, 108 N. Y. 56; *Sonn Brush Co.* v. *Lumber Mutual Fire Ins. Co.*, 249 App. Div. 675; *O'Connell* v. *New Jersey Fidelity & P. G. Ins. Co.*, 201 App. Div. 117, affd. 235 N. Y. 583; *Perretta* v. *St. Paul Fire & Marine Ins. Co.*, 106 Misc. 91, affd. on opinion below 188 App. Div. 983; *Hukle* v. *Great American Ins. Co.*, 230 App. Div. 477; *Rau* v. *Westchester Fire Ins. Co.*, 50 App. Div. 428, affd. 168 N. Y. 665.)

The judgments appealed from are reversed, with costs, and a new trial ordered.

HILL, P. J., BLISS and HEFFERNAN, JJ., concur; SCHENCK, J., dissents and votes to affirm.

Judgments reversed on the law and facts, with costs, and a new trial granted.