Argued January 25; reversed March 5, 1935

# STATE *v.* HURST ET AL.

(41 P. (2d) 1079)

*Herbert A. Cooke,* of Portland, for appellants.

*Rex Kimmell,* Assistant Attorney General, and *William H. Trindle,* District Attorney, of Salem (I. H. Van Winkle, Attorney General, on the brief), for the state.

BAILEY, J. The defendants, William S. Hurst and W. Reginald Hurst, were tried and convicted in the circuit court of the state of Oregon for Marion county of the violation of § 14, chapter 382, Oregon Laws, 1933, known as "Produce Dealers and Peddlers Act". After sentence and prior to the hearing in this court the defendant William S. Hurst died and motion has been made that the cause abate as to him. The surviving defendant alone will hereinafter be referred to as the appellant.

The indictment charged that the defendants were. at the time of the commission of the alleged crime, cash buyers of produce as defined by § 1, subdivision (j), of the act above mentioned; that, representing themselves to be cash buyers, they contracted to purchase for resale onion sets from certain growers of produce in Marion county and agreed to pay cash therefor upon delivery; that the onion sets were delivered to them as specified in the contract and that the defendants refused to pay cash therefor within 48 hours after demand made upon them for payment. The defendants demurred to the indictment on the ground that it did not state facts sufficient to constitute a crime, and the overruling of the demurrer is the only assignment of error urged here.

It is contended by the appellant that the demurrer should have been sustained for the following reasons: That (1) onion sets are not "produce" as defined in the act; that (2) the act violates the fourteenth amendment of the constitution of the United States in that

it denies to the defendants the equal protection of the law; that (3) it is violative of § 20, article I, constitution of Oregon, "in that the act grants to certain citizens or classifications of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens"; and that (4) the act is in contravention of § 20, article IV, constitution of Oregon, as it contains more than one subject "and subjects not expressed in the title thereto".

The act purports to regulate the transportation and sale of all farm produce as the term "produce" is therein defined. It includes sale on consignment, through wholesale produce dealers, brokers, commission merchants, credit buyers, cash buyers, wholesale produce peddlers and retail produce peddlers.

Subdivision (c) of § 1 of the act is as follows:

"The term 'produce' means fruits, vegetables, live and dressed poultry, dressed veal, pork, mutton and beef, but it shall not include fruits and vegetables purchased for the purpose of reselling the same canned, dried, frozen, or other preserved or concentrated form or of manufacturing into a product or by-product in which the individuality of the individual specimens of such fruit and vegetables is lost; provided, that said fruits and vegetables are actually so used; the term 'dressed veal, pork, mutton and beef' means only such veal, pork, mutton and beef in the whole carcass and shall not be deemed to mean any meat that is cut, prepared, or preserved for retail sale."

"Grower" is defined by subdivision (d) of § 1 to mean "any person engaged in the business of growing or producing any produce", while a "cash buyer" is defined as follows:

"The term 'cash buyer' means every person (1) who has a regular business address in Oregon and who has registered the same in the office of the department;

and (2) who, if his permanent business address is located outside of Oregon, has also registered such permanent address in the office of the department; and (3) who furnishes in writing to each grower with whom he does business, his regular business address; and (4) who represents himself as a 'cash buyer'; and (5) who purchases produce in Oregon from the grower thereof for the purpose of resale; and (6) who agrees by his contract to pay the purchase price upon demand following delivery; and (7) who within 48 hours (Sundays and legal holidays excepted) after demand has been made by said grower upon him, pays or remits to said grower the full purchase price of all or any delivered portion of said produce, either in lawful money of the United States or by bank check of said buyer certified by the bank upon which it is drawn, or by cashier's check of a bank in Oregon, payment of which can not be stopped."—Subdivision (j) of § 1.

By § 14 of the act "any person who represents himself as a 'cash buyer' but who is not a cash buyer as defined in this act, or any cash buyer as defined in this act who willfully refuses to make payment for produce as and when required by this act, is guilty of a felony, and, upon conviction thereof, shall be punished by a fine of not to exceed $5,000, or by confinement in the state prison for not more than one year, or by both such fine and imprisonment".

The first question to be decided is whether or not onion sets fall within the meaning of "produce" as the act defines that term. Unless it can be said that onion sets are vegetables within the meaning of that word as used by the legislature in describing what constitutes "produce", it is apparent that they are not such produce as the act embraces.

In ascertaining the meaning of words the court is to take judicial notice of the ordinary meaning in which the words are used "and upon such a question dictionaries are admitted, not as evidence, but only as

aids to the memory and understanding of the court'':
*Nix v. Hedden,* 149 U. S. 304 (37 L. Ed. 745, 13 S. Ct. 881).

The dictionaries define ''vegetables'' as follows:

''1. In a restricted sense, a part or the whole of a herb used chiefly for culinary purposes, but also frequently for feeding domestic animals. 2. In the comprehensive sense, any living organism not possessed of animal life; a plant of any kind.''—Funk & Wagnalls Standard Dictionary.

''A plant, specifically, in common usage, a herbaceous plant cultivated for food, as the cabbage, turnip, potato, bean, etc., also the edible part or parts of such plants, as prepared for market or table. There is no well-drawn distinction between vegetables and fruits in the popular sense; but it has been held by the courts that all those which, like potatoes, carrots, peas, celery, lettuce, tomatoes, etc., are eaten (whether cooked or raw) during the principal part of a meal are to be regarded as vegetables, while those used for dessert are fruits.''—Webster's New International Dictionary, 2d Ed. (1934).

''II. (1) A plant. (2) In a more limited sense, a herbaceous plant used wholly or in part for culinary purposes, or for feeding cattle, sheep or other animals, as cabbage, cauliflower, turnips, potatoes, spinach, peas and beans.''—Century Dictionary.

''1. A living organism belonging to the vegetable kingdom or the lower of the two series of organic being; a growth, devoid of animal life: a plant in the widest or scientific sense. 2. A plant cultivated for food, esp. an edible herb or root used for human consumption and commonly eaten, either cooked or raw, with meat or other article of food.''—The Oxford English Dictionary.

''Onion set'' is thus defined and described by the lexicographers:

''A very small onion-bulb grown for planting in place of seed and maturing early.''—Funk & Wagnalls Standard Dictionary.

"Set, V, 38b. A small tuber, bulb, corm, or the like; as an onion set."—Webster's New International Dictionary, 2d Ed. (1934).

"The use of sets is still another modification of the regular seedling method, in which the seed is planted one year to form the sets from which to grow a crop of mature onions the following year. * * * Onions grown from sets will ripen earlier than those from seed sown in the fields."—Lowther's Encyclopedia of Practical Horticulture, Vol. 3, p. 1462.

"There are two general methods of propagating the onion—by seeds and by bulbs. * * * Propagation by bulbs is employed for the purpose of securing early onions . . . Bulb-propagation is of three general categories: * * * (3) the use of ordinary bulbs which are arrested in their growth, known as 'sets'."—Bailey's Standard Cyclopedia of Horticulture, Vol. IV, pp. 2348, 2349.

■ An onion set is, therefore, not such "vegetable" as indicated by that word when used in ordinary parlance. It is, in the broadest sense in which the word may be used, a vegetable indeed, as is any plant. But it is not such vegetable as evidently intended to be meant by the section of the act here in question.

■ In defining the term "produce" to include "fruits, vegetables, live and dressed poultry, dressed veal, pork, mutton and beef" the legislature unquestionably had reference to food products.

The respondent refers to the fact that the onion sets were contracted for before they were grown. The contracts show that they were to be "dry, sound and well cleaned and cured, of uniform size, running not smaller than 3/8 inch in diameter and not larger than 7/8 inch in diameter", which is further evidence that they were not intended for consumption as vegetables and so within the scope of the act, but were grown and sold primarily and exclusively for purposes of propagation.

Both the respondent and the appellant seem to assume that grain, hay and seeds of all kinds are not included within the purview of this act. There would, however, appear to be no escape from including all agricultural and horticultural products within the scope of the act, if onion sets were to be included.

We conclude that although onion sets are vegetable growths they do not fall within the meaning of "vegetables" as included in the definition of "produce" in the 1933 act. Inasmuch as onion sets are not covered by the act, or the sale thereof regulated by it, the indictment here involved fails to state a crime, and the demurrer thereto should have been sustained.

This disposition of the case obviates the necessity of passing upon the other questions raised by the demurrer to the indictment.

■ When the motion was made at the time of argument in this court, by counsel who had represented the late William S. Hurst in his lifetime, that the appeal and cause be abated as to that defendant, the attorneys for the state consented to such abatement. The appeal of that defendant and the fine imposed upon him are therefore abated: *United States v. Mitchell,* 163 Fed. 1014; 25 C. J. 1154, § 17.

The judgment appealed from as to the defendant W. Reginald Hurst is reversed and the cause remanded with instructions to sustain the demurrer to the indictment and to discharge the defendant and exonerate his bail.