(No. 31177.

Roy H. Youngquist *et al.*, Appellants, *vs.* The City of Chicago *et al.*, Appellees.

*Opinion filed January 18, 1950.*

LAWLOR & WALSH, of Chicago, (DUDLEY R. SULLIVAN, of counsel,) for appellants.

BENJAMIN S. ADAMOWSKI, Corporation Counsel, (L. LOUIS KARTON, MARTIN H. FOSS, and ARTHUR MAGID, of counsel,) all of Chicago, for appellees.

Mr. JUSTICE FULTON delivered the opinion of the court:

This is an appeal from the superior court of Cook County denying the prayer of Roy H. Youngquist and Carl G. Danielson, doing business as Youngquist Greenhouses, hereinafter referred to as plantiffs, for a permanent injunction to issue against the defendant the city of Chicago, restraining it and its agents, servants and employees from enforcing any of the provisions of the Wholesale Florists License Ordinance against the plaintiffs and others similarly situated. The decree of the trial court dismissed the cause for want of equity.

The cause involves the Wholesale Florists License Ordinance, contained in chapter 128 of the Municipal Code of Chicago. The complaint alleges that the plaintiff's business consists in the raising, growing, developing and producing flowers and plants in their greenhouses in the defendant city. They further allege that they maintain no store, display or showroom for the display of flowers or plants to the public at large and they are not engaged in the business of selling, offering for sale, or keeping, with the intention of selling at wholesale, flowers, bouquets, funeral floral designs or growing plants. The complaint further alleges that an action had been instituted in the municipal court of the defendant city by the defendant city against the plaintiffs, charging them with violation of the ordinance for failure to obtain a license, and that others

similarly situated are faced with arrest and prosecution unless they procure licenses.

The plaintiff further alleges that the ordinance is not applicable to them for the reason that they are not engaged in the business of selling at wholesale, but that they do grow and produce flowers, and that any sales which they make are incidental thereto and are made to a limited number of customers. They claim they are not required to procure any wholesale florist's license.

The complaint further charges that the enforcement of the ordinance against the plaintiffs and others similarly situated will result in a multiplicity of suits, in each of which the validity of the ordinance will be raised as a defense and will have to be separately tried, and that unless equity intervenes, plaintiffs and others will have to defend numerous criminal prosecutions and incur large financial losses which cannot be adequately compensated for in damages. Claiming no adequate remedy at law exists, they pray for a restraining injunction.

Defendants' answer admits that the plaintiffs are engaged in the business of growing and producing plants, but also alleges that they are engaged in the business of selling, within the meaning of the ordinance in question. They allege that plantiffs advertise and hold themselves out to the public as being wholesale florists. They admit a prosecution was instituted for failure to obtain a license and they deny that the provisions of the ordinance are not applicable to the plaintiffs. They deny that enforcement of the ordinance would result in irreparable injury and that compliance with the ordinance will not only not injure plaintiffs, but will be beneficial to them and others.

The plaintiffs have proceeded on the theory that they are not subject to the ordinance, but, even if it be held that they are subject thereto, that the ordinance is invalid and unconstitutional. In support of this theory, the plaintiffs cite a number of cases from this and other juris-

dictions, to substantiate the claim that they are not wholesalers within the definition of the ordinance. They further claim that the ordinance is vague and uncertain in that it describes a wholesale florist as one who sells at wholesale. They further claim the ordinance is regulatory, purportedly passed under the police power and therefore invalid, that the business of the plaintiffs is not within the scope of the police power, that the license fee is excessive and out of proportion to the cost of regulation and supervision, that the ordinance in prohibiting off-premises sales is unconstitutional, and that it creates an unreasonable and improper classification, and the fees imposed are not uniform as to the class upon which they operate, as required by article IX, section 1, of the constitution.

The defendants argue that the complaint alleges and the evidence establishes that plaintiffs are engaged in the business of selling flowers at wholesale, that they are subject to the provisions of the ordinance, and that the ordinace is valid and constitutional and not subject to any of the objections urged by the plaintiffs.

Briefly summarizing the facts, it appears from the record that the plaintiffs are engaged in the business of growing and producing potted plants and flowers in seven greenhouses maintained by them for this purpose. They have no display room or iceboxes or refrigerators or customer's rooms, but do have a desk in the shed serving as an office. They sell no products other than those which they raise and grow themselves, and sell only to persons engaged in the retail florist business. They sell, generally, to a list of customers accumulated over the years. Approximately six per cent of the total business time is devoted to selling, the other portion being devoted to the raising of plants which are sold. They are listed in the telephone directory as "wholesale florists" and signs on their premises directing would-be purchasers to the greenhouses bear the legend "wholesale florists." The evidence

further shows that retail florists came to the premises in question to look over flowers and potted plants and to buy or place orders. Verbal orders were taken both in person and over the telephone from retail florists and these orders were filled. Flowers and potted plants in quantities were sold to retailers, who in turn resold them to the public.

The pertinent portion of the ordinance in question here is to be found in chapter 128, Municipal Code of Chicago. Section 1 of chapter 128 defines the term "wholesale florist" to mean: "Any person engaged in the business of selling, offering for sale, or keeping with the intention of selling at wholesale, flowers, bouquets, funeral floral designs or growing plants." The ordinance also provides for a $100 licensing tax and contains various provisions for the inspection and licensing of wholesale florists, together with sanitary provisions covering shops and business locations. The basis for the enactment of the ordinance is found in section 23-91 of the Revised Cities and Villages Act (Illinois Revised Stat. 1947, par. 23-91, chap. 24,) which confers upon municipalities the power to license, tax and regulate florists.

The first argument made by the plaintiffs herein is that the key words of the ordinance are "engaged in the business of selling, offering for sale, or keeping with the intention of selling" and, "at wholesale." The plaintiffs insist that they are not engaged in the business of selling, and that they are, therefore, not doing a wholesale business. They quote the definition of the term "business" used by this court in *Walsh* v. *Industrial Com.*, 345 Ill. 366, to the effect that a business is "an employment which occupies a substantial portion of the time and attention of one engaged in it." They then argue that a business such as theirs, where only six per cent of the total time devoted to the business is allocated to selling, could not possibly be within the definition of the act. They further

point out that they are not wholesalers within the generally accepted meaning of the word and cite cases tending to bear out this distinction. In *Great Atlantic and Pacific Tea Company* v. *Cream of Wheat Company,* 227 Fed. 46, (CCA 2nd 1915) the court defined wholesaler as "one who sells, usually in smaller quantities, but never to the ultimate consumer of an individual unit. He sells either to a jobber, a sort of middle-man, or to a retailer, who sells to the consumer." We think to adopt this definition of wholesaler is to narrow the term improperly. We have held that the word "wholesale" means "selling to retailers or jobbers rather than to consumers." (*Stolze Lumber Co.* v. *Stratton,* 386 Ill. 334; *Revzan* v. *Nudelman,* 370 Ill. 180.) Webster's New International Dictionary, 2nd ed. 1948, defines "wholesale" as "selling or sold to retailers or jobbers rather than consumers." Under these definitions it is apparent that the plaintiffs herein are acting as wholesalers in that portion of their business wherein they sell their produce to retailers for further sale to the consumer. If the plaintiffs sold the produce to a middleman, who in turn sold to retailers, the plaintiffs would be the growers and producers they now claim to be. They, however, have held themselves out as wholesalers and have actually engaged in wholesale selling within the definitions of Webster's Dictionary and the *Stolze* case in selling produce and growing products to retailers. Whatever the reasons for omitting a middleman, the plaintiffs have placed themselves in the position of a wholesaler, have advertised as such, and have engaged in the business of wholesale selling. It is these sales which keep the plaintiffs in the business of also raising, growing and producing the plants from seeds.

The second point raised by the plaintiffs is that they are immune from any license, tax or regulation by reason of a statute of 1874, which provides that "every farmer, fruit and vine grower and gardener shall have an undis-

puted right to sell the produce of his farm, orchard, vineyard and garden in any place or market where such articles are usually sold, and in any quantity he may think proper, without paying any state, county or city tax or license for doing so, any law, city or town ordinance to the contrary notwithstanding." Ill. Rev. Stat. 1874, chap. 5, par. 27.

Manifestly, a person desiring to come within the purview of the statute must be either a "farmer," "fruitgrower," "vinegrower" or "gardener," and must raise only the "produce" of "farm, orchard, vineyard, or garden." The narrow question presented here is whether or not the plaintiffs are gardeners, maintaining a garden with produce within the meaning of the statute. It is obvious, and needs no further discussion, that the plaintiffs are not farmers, fruit or vine growers, and do not maintain a farm, orchard or vineyard.

Again referring to the common connotation of the word, a garden is defined in Webster's New International Dictionary, 2d ed., as "a piece of ground appropriated to the cultivation of herbs, fruits, flowers or vegetables." Bouvier's Law Dictionary defines the term as "a piece of ground appropriated to raising plants and flowers." The defendants attempt to overcome these definitions by stating that an integral part of every definition of garden is that it is a "piece of ground." They then argue that a greenhouse does not involve the tilling of a piece of ground as is entailed in the cultivation of a garden, but is merely a house devoted to the protection or cultivation of tender plants. The difficulty with accepting this argument of defendants is that a greenhouse, as shown by the proof here, can also be a place where plants are raised to maturity from seeds as much so as if said seeds had been planted and raised in a piece of soil outside of the protection of glass. Normally speaking, greenhouses, when used as by the plaintiffs here, allow persons to raise produce during any month of the year. In fact, many gardens are

now contained in greenhouses and produce vegetables for human consumption to be sold on the market throughout the winter months.

But the defendants also argue that the flowers and plants grown by the plaintiffs are not "produce" in that the term has the definition of only eatable foodstuffs. In support of this contention they cite *State* v. *Hurst,* 149 Ore. 159, 41 Pac. 2d 1079, wherein the court defines the term "produce" as including only food products. The distinction between that case and the situation here is that the statute defines "produce" as including named items limited to food products. The common meaning of the word, and one which we must use in determining the effect of the statute of 1874, as found in Webster's New International Dictionary, 2d ed., is production, or that which is produced, brought forth, or yielded, a product or a yield. Similar definitions state that it is something brought forth or yielded as in garden products. We fail to see the distinction that flowers and plants grown from bulbs and seeds are not "produce," where onions, carrots, or similar vegetables grown in the same fashion would be considered to be "produce." Both are the products of a garden and it must necessarily follow that the yield of the garden is "produce" within the meaning of the 1874 exemption whether it consists of eatable plants or floral plants.

Under these circumstances, unless something can be shown to nullify the effect of the statute of 1874, we must hold that the plaintiffs do not come within the provisions of the ordinance of the city of Chicago. The defendants first state that the exemption of the statute of 1874 not having been urged below, the plaintiffs are precluded from raising it for the first time on appeal. The plaintiffs properly point out that the amended complaint states that "they are not required to procure a wholesale florist license for operating their business," and are

merely advancing a legal proposition in line with this contention.

Lastly, the defendants argue that the statute of 1874 grants a special or exclusive privilege and immunity in violation of section 22, of article IV, of the constitution and of the equal protection clause of the fourteenth amendment of the Federal constitution. It should be noted that the distinction between florist and farmer is not presented by the statute in question in that they are mentioned separately by the words "farmer" and "gardener." The statute of 1874 affects alike all parties coming within its application. Laws will not be regarded as special or class legislation merely because they affect one class and not another, provided they affect all members of the same class alike. *Stearns* v. *City of Chicago,* 368 Ill. 112.

It is not our intention to hold that for all purposes a florist is a "farmer" or every greenhouse is a garden. We do hold, however, that under the facts in this case the plaintiffs herein are "gardeners" and the greenhouse, as operated, is a garden within the application of the act of 1874.

In view of the reasoning we have adopted in this cause, it is unnecessary to consider the other arguments advanced by the plaintiffs and the defendants herein. It is sufficient to state that under the clear meaning of the language involved, the plaintiffs, in the business exclusively of growing and producing plants and flowers in their greenhouses in the city of Chicago, are gardeners within the meaning of the act of 1874, and are, therefore, exempt from the provision of the Chicago ordinance sought to be applied to them in this case. For the reasons set forth herein, the decree is reversed and the cause remanded, with directions to grant the relief prayed.

*Reversed and remanded, with directions.*