## DYER *v.* ROYAL INSURANCE COMPANY, LIMITED

[No. 227, September Term, 1958.]

*Decided May 13, 1959.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*John A. Blondell,* with whom were *J. Thomas Nissel* and *McWilliams & Melvin* on the brief, for the appellant.

*Kenneth C. Proctor* and *Charles Markell, Jr.,* for the appellee.

HAMMOND, J., delivered the opinion of the Court.

Fire, ignited by an overheated combine, destroyed twenty-five acres of barley in a field on a farm owned by Frank P. Dyer, the appellant. Dyer had in force a policy of the Royal Insurance Company, Limited, which in item 18 provided insurance against loss by fire to "farm produce (excluding tobacco and growing crops), feed, seed and supplies while in said barns and outbuildings or on premises outside of buildings." Some of the barns and outbuildings, also insured by the policy, were on one farm, others on another. Item 18 was the only item applicable to both farms and also was the only item subject to a co-insurance clause (90%).

Dyer contends that a matured crop, which has ceased to enjoy the assimilative processes of plant life, is no longer a growing crop, that it has become farm produce, and that the barley was in this category and, so, within the coverage and without the exception of item 18. The insurer says that the plain intent of the policy is to except unharvested or unsevered crops from coverage.

The issue was presented below by a demurrer to a particularized declaration, which revealed the terms of the policy sued on. The demurrer was sustained and judgment entered for the insurer for costs after Dyer failed to amend.

Dyer points out that the term "growing crops" has been variously interpreted by the courts in deciding whether a crop

is realty or personalty and whether or not it is subject to execution or attachment, the result often being compelled by the particular statute involved. From this contrariety, he argues that the use of the phrase makes the policy ambiguous and therefore to be construed in favor of the insured, relying on *Hancock Mutual Life Insurance Co. v. Plummer,* 181 Md. 140, 142, and *Schloss v. Metropolitan Life Ins. Co.,* 177 Md. 191. We accept as controlling the rule that the intention of the insured and the insurer is to be ascertained if reasonably possible from the policy as a whole, and given effect. *Landwehr v. Continental Life Ins. Co.,* 159 Md. 207, 210-211; *New England Mutual Life Ins. Co. v. Hurst,* 174 Md. 596, 603; *Hankins v. Public Service Mutual Ins. Co.,* 192 Md. 68, 84.

We have concluded that the intention of the parties was that unharvested crops were not insured. Item 18 insures "farm produce", which connotes growths or increases which the farm or its animals have yielded—those which have reached marketable or usable condition. *Youngquist v. City of Chicago* (Ill.), 90 N. E. 2d 205, 208; *Keeney v. Beasman,* 169 Md. 582, 587. Crops, including barley, have not been yielded by the land and are not marketable or usable until severed. The policy sets off produce, which is personalty and which was insured, against growing crops, which at common law and in Maryland are realty, and which were not insured. In *Wootton v. White,* 90 Md. 64, 71, this Court declared the law of Maryland to be that "before the crop has matured and *been actually severed from the soil"* it continues to be realty. (Italics supplied.) The decision is in accord with those of other courts. See *Tripp v. Hasceig,* 20 Mich. 254, 260 ("It is true that the authorities in alluding to this subject very generally use the words 'growing' crops, as those embraced by a conveyance of the land, but this expression appears to have been commonly employed to distinguish crops still attached to the ground, rather than to mark any distinction between the 'ripe and unripe' crops") ; and *Hartshorne v. Ingels* (Okla.), 101 P. 1045, and cases cited in each.

Various consequences that would, or might, flow from insuring of unsevered but mature crops cannot fail to have been

within the contemplation of the parties and strongly support the inference that no such coverage was intended. Whatever the policy covered was insured not only against fire but also against hail, windstorm and other extended coverage perils. The insurer expressly did not insure crops against these perils during most of the time they were in or attached to the soil. Why, then, would the insurer want or intend to cover the same crop against the same hazards for the remainder of the time it was unsevered. If the period of coverage is made to depend on the moment when the crop ceases to draw sustenance from the ground, a most indefinite line, extremely troublesome and impractical to draw, has been made the test of liability. The impracticality of such a test has persuaded various courts to reject the insured's argument that the term growing crops does not include matured but uncut crops. In *Tripp v. Hasceig, supra,* the Supreme Court of Michigan said at pages 261-262 of 20 Michigan:

> "When parties are bargaining about land, the slightest observation will discover whether the crops are severed or not, and there will be no room for question or mistake as to whether they belong with the land or not, if owned by the vendor.
>
> "If, however, the crops are to be considered as land or personal chattels, as they continue or do not continue to draw nourishment from the soil, the instances will be numerous in which very difficult inquiries will be requisite to settle the point."

The same observation is made in *Cubbage v. Clements* (Del.), 14 A. 2d 378, 379 ("The minds of men would not agree upon the exact moment of maturity") ; and in *St. Paul Fire & Marine Ins. Co. v. Pipkin* (Ct. Civ. App. Tex.), 207 S. W. 360, 365 ("We do not think it was the intention of the policy to limit its duration to any such uncertain period of time"— the period of assimilation, sustenance, and actual growth). To read the policy as meaning what the insured says it means would result in there being, over its five-year term, many periods of varying lengths when it would be highly uncertain, if not impossible to tell, whether a crop was or was not in-

sured. We cannot ascribe to the words of the policy an intention to create this unreasonable and impracticable situation.

Item 18 is the only item in the policy to which the 90% co-insurance clause applies. If the policy covers crops which are mature but uncut, necessarily there would be actual risks only occasionally, and for short periods of time. It is scarcely to be supposed that the insured would plan to carry for the five-year term of the policy, at the highest rate of several specified, sufficient insurance to meet the maximum demanded by the co-insurance clause as to the highly variable amount of property insured under item 18. If matured standing crops were intended to be insured under item 18 and a loss occurred to such crops, it would be necessary, because of the co-insurance clause, to make the difficult ascertainment of the value of any crops then standing on either farm in order to determine whether the co-insurance clause reduced the amount the insured could recover from the insurer. Again we cannot find such a situation was intended.

Reading all the provisions of the policy for their bearing on what the parties meant by what they said in item 18, we find they meant that crops mature but unsevered were not insured. Consequently, the action of the lower court in sustaining the insurer's demurrer was correct.

*Judgment affirmed, with costs.*