Mary Ann VERNATTER, Surviving wife of Quentin Vernatter, deceased, to her own use, and as Mother and Next Friend, to the use of David Paul Vernatter and Quentin Vernatter, Jr., surviving infant children of Quentin Vernatter, deceased,

v.

ALLSTATE INSURANCE COMPANY, an Illinois corporation.

Civ. No. 15643.

United States District Court
D. Maryland.

April 26, 1965.

William G. Geyer, Jr., Baltimore, Md., and Meredith A. House, Richmond, Va., for plaintiff.

F. Gray Goudy and Herbert Burgunder, Jr., Baltimore Md., for defendant.

THOMSEN, Chief Judge.

Plaintiff, having obtained a judgment against Jacob Parks, and having been paid the full limit of a policy issued to Sanford Osborne, the owner of the automobile which Parks was driving, now seeks to recover under a policy issued to Parks' wife covering her automobile, which extended certain coverage to Parks. Each side has filed a motion for summary judgment, based upon the pleadings as amplified by a copy of the policy in suit and the pretrial order.

The facts are simple and undisputed. Parks, his wife Helen, and Sanford Osborne, his wife's uncle, were all members of the same household. Parks was driving Osborne's car at the time of the ac-

cident, which resulted in a judgment of $50,600 against Parks. Allstate Insurance Company, defendant herein, had issued an automobile liability policy to Osborne, with an applicable $10,000 limit, covering the automobile which Parks was driving at the time of the accident. Allstate has paid plaintiff $10,000 under that policy.

Allstate had also issued a policy to Mrs. Helen Parks, covering an automobile which she owned, with certain extended coverage, and with a $25,000 limit for injuries to or death of one person. Part 1 of that policy provided "Liability Protection", subject to all the terms of the policy, to: "1. The named insured with respect to the owned or a non-owned automobile; 2. Any resident of the named insured's household with respect to the owned automobile; 3. (not material); 4. Any relative with respect to a non-owned private passenger automobile or trailer not regularly furnished for use of such relative; 5. (not material)." [1]

The policy contained the following "Definitions of words used under this Part", i. e., liability coverage:

"1. Persons Insured

\* \* \* \* \* \*

"(b) 'named insured' means the individual named on the Supplement Page [Helen Parks], and his spouse if a resident of the same household; and

"(c) 'relative' means a relative of the named insured who is a resident of the same household.

"2. Automobiles Covered

\* \* \* \* \* \*

"(e) 'non-owned automobile' means an automobile, including a trailer, not owned by the named insured or any relative, other than a temporary substitute automobile."

Under the provisions quoted above, Jacob Parks was a "named insured", entitled to the same protection as his wife with respect to "a non-owned automobile"; but an automobile owned by any relative of the named insured who was a resident of the same household was not "a non-owned automobile" covered by the policy. No question of a temporary substitute automobile is involved.

The question, therefore, is whether Sanford Osborne was a "relative" of Jacob Parks. If so, the policy did not undertake to protect Parks while driving Osborne's automobile.[2]

The parties are agreed that the case is controlled by Maryland law. There is no Maryland decision precisely in point, but the Court of Appeals of Maryland has stated the principles which must guide the consideration of such questions. In Ebert v. Millers Mutual Fire Ins. Co., 220 Md. 602, 155 A.2d 484 (1959), Chief Judge Brune said:

"A general rule as to the construction of an insurance policy is that the intention of the parties is to be ascertained if reasonably possible from the policy as a whole. Dyer v. Royal Insurance Co., 220 Md. 105, 150 A.2d 915 [71 A.L.R.2d 1262], and cases therein cited. Maryland has not adopted the rule followed in many jurisdictions that an insurance policy is to be most strongly construed against the insurer. Frontier Mortgage Corp. v. Heft, 146 Md. 1, 125 A. 772; Brownstein v. New York Life Insurance Co., 158 Md. 51, 54,

---

1. The policy contained the following customary provision:
   "If there is other insurance
   "Allstate shall not be liable under this Part 1 for a greater proportion of any loss than the applicable limit of liability stated on the Supplement Page bears to the total applicable limit of liability of all collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or a non-owned automobile shall be excess insurance over any other collectible insurance."

2. If Osborne was not a "relative" of Parks, a second question would arise: Does the fact that Osborne was a relative of Helen Parks, the named insured to whom the policy was issued, prevent Osborne's automobile from being an automobile covered by the policy?

148 A. 273. On the other hand, as in other cases involving the construction of contracts, where an instrument is drawn by one party an ambiguity will be resolved against the party who drafted the document. Brownstein v. New York Life Insurance Co., supra; New England Mutual Life Ins. Co. v. Hurst, 174 Md. 596, 604, 199 A. 822. See also Hankins v. Public Service Mutual Insurance Co., 192 Md. 68, 85, 63 A.2d 606, citing Restatement, Contracts § 236(d), comment (1932)." 220 Md. at 610, 611, 155 A.2d at 488.

The Maryland Court would undoubtedly respect the decision and the reasoning of the Fourth Circuit in Fidelity and Casualty Company of New York v. Jackson, 297 F.2d 230 (1961), which dealt with a policy similar to the one involved herein. The policy in that case, written on Jackson's Pontiac car, excepted from its liability coverage all obligation to defend and indemnify the named insured against any claim for damages arising from his operation of an automobile owned by a "relative" who was "a resident of the same household". While driving the car of his mother-in-law, who was "a resident of the same household", Jackson had an accident which gave rise to claims against him. Speaking through Judge Bryan, the Court said:

"The word 'relative' denotes both those connected to a person by blood and those connected by marriage. The Oxford Dictionary defines a relative as 'One who is connected with another or others by blood or affinity'. Vol. VIII (1933 ed.) at p. 397. According to Webster's New Collegiate Dictionary (1959 ed.), a relative is 'A person connected with another by blood or marriage; a kinsman or kinswoman'. Clearly, it is a more comprehensive term than 'kin': it embraces kin, kinfolk and kindred—those 'descended from a common ancestor'—as well as inlaws. Oxford, supra, Vol. V at p. 696. Whether in a particular place it connotes both affines and consanguines, or one or the other, must depend upon its verbal and factual environs.

"Thus, merely because it has a broad meaning the word is not necessarily indefinite. The insurer was not writing inexactly when in its policy it withheld insurance from a policyholder while he was operating the car of a 'relative'. There was no reason the Company could not, if it chose, expand the exception so as to describe both blood and affined relations. And if that was the intent of the scrivener, the court is not free to give the exception a lesser import. For to narrow the exclusion by interpretation and confine 'relative' to those having a relationship by birth or descent merely because that would bring the insured and the tort claimants within the policy would, without more, be an unjustified reformation of the instrument. The rule of construction permitting the reading of a contract in strictness against the draftsman, here the Company, applies only when more than one intendment may appear in the document. No such ambiguity appears here, for the word is sharply qualified by other phrases in the policy and the purpose of the exception which—together with the circumstances of this case—all clarify the noun." 297 F.2d at 231, 232.

In that case, as in this, it was argued that if "relative" embodies all persons having a relationship to the insured through marriage, the effect would be to enlarge the exemption unreasonably and render it unenforceable. The Fourth Circuit rejected that argument, noting that a son-in-law and a mother-in-law are about as close as is conceivable in degree of affinity, and that the latitude of the stipulation was severely straitened by the further requirement that the "relative" be "a resident of the same household" as the insured.

A wife's uncle is only slightly less close in affinity to a husband than the wife's mother. The inclusion in the

term "relative" of a wife's blood relations living in the same household does not unreasonably extend that term as it is used in the policy. It broadens the coverage of the policy by extending its protection under item 4 of the list of persons insured, quoted above, as it narrows the coverage under the definition of "non-owned automobile." The conclusion that a wife's blood relation living in the same household should be considered a "relative" of the husband is further supported by the following paragraphs from Judge Bryan's opinion:

"The obvious aim of the exception in the policy was to deny to an insured coverage through a single policy of other cars which presumably would be readily and regularly available to him because the owners were of his immediate household. Jackson's policy was already protecting the permissive use of his car by all the other members of the domestic circle. Avoidance of overloading of the policy, the Company evidently believed, could best be accomplished by bringing all of the other vehicles of the household under the exceptive proviso. Plainly, then, 'relative' was employed in its widest concept. The scheme of the insurance may be noticed in ascertaining the usage of the words in a policy. State Farm Mut. Auto. Ins. Co. v. James, supra [4 Cir.], 80 F.2d at 802.

"That this is also the practical rendering of 'relative' here is demonstrated by one of the results which would follow under the opposite conclusion. If in the exception the word refers only to a blood relation, then the wife of the insured, who is also made an insured by the policy, would not be shielded by the policy while driving her mother's Ford, inasmuch as she is of the blood of the owner; but if the insured husband were driving that car the policy would save him harmless. To summarize, in the circumstances of this case, the term 'relative' cannot be said to be uncertain in defining what non-owned cars are not covered by the policy." 297 F.2d at 232, 233.

Most of the cases cited by plaintiff are distinguished in the Jackson opinion, 297 F.2d at 233. Only one need be mentioned, Indiana Lumbermens Mut. Ins. Co. v. Passalacqua, 30 Misc.2d 626, 211 N.Y. S.2d 62, 64 (Sup.Ct.Eq. Niagara County, 1961). In that case the automobile which the insured was operating belonged to the husband of the niece of the insured's wife. The Court rejected the insurer's prayer for exemption, holding that the insured and the husband of his wife's niece were not "relatives". The Court noted that in matters of descent and distribution "the courts have generally held that where relationship by affinity exists, it is by virtue of a marriage between one party to that marriage and the blood relatives of the other party to the marriage." 211 N.Y.S.2d at 65. Judge Bryan distinguished the Passalacqua case from the Jackson case on two grounds: that the close affinity of the insured to his wife's mother was not present, and that "there was no common residence of the in-laws and, hence, the fear of an unfair, multiple liability upon a single policy justifying the exception was absent."

Both grounds of distinction apply in the case at bar. The relationship by affinity between a husband and his wife's uncle exists "by virtue of a marriage between one party to that marriage and the blood relatives of the other party to the marriage", although, as noted above, the relationship is not as close as that between the husband and his wife's mother. The second ground—common residence —applies with the same force. Plaintiff argues that the situation in the case at bar is different from the Jackson case because Allstate had issued policies covering both cars, the wife's and her uncle's. That fact, however, does not change the proper construction of the individual policies; they were independent of each other, and might have been written by different insurers. We are not

dealing with one policy covering two or more cars; such a policy presents different problems.

For the reasons set out above, I conclude that the Maryland Court would follow the reasoning of the Jackson case, would construe the word "relative" to include the wife's uncle living in the same household with Parks, and would hold that the policy issued to the wife does not provide liability protection to her husband while driving her uncle's car.[3]

Judgment will be entered in favor of the defendant.

---

3. This conclusion makes is unnecessary to consider the question whether the fact that Osborne was a relative of Helen Parks, the named insured to whom the policy was issued, prevents Osborne's automobile from being an automobile covered by the policy.