# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2220

_____

| | |
|---|---|
| George's Inc., | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Allianz Global Risks US Insurance Co., | * |
| | * |
| Appellant. | * |

_____

No. 09-2248

_____

Appeals from the United States
District Court for the
Western District of Arkansas.

| | |
|---|---|
| George's Inc., | * |
| | * |
| Appellant, | * |
| | * |
| v. | * |
| | * |
| Allianz Global Risks US Insurance Co., | * |
| | * |
| Appellee. | * |

_____

Submitted: January 12, 2010
Filed:   March 9, 2010

_____

Before LOKEN, Chief Judge, JOHN R. GIBSON, and WOLLMAN, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

George's Inc. brought this diversity lawsuit against its insurer, Allianz Global Risks US Insurance Co., arguing that Allianz failed to indemnify George's for business expenses and personal property losses as required under the terms of its insurance policy. The district court denied Allianz's motion for summary judgment on the contested business expenses and granted summary judgment for Allianz on George's personal property claims. Both parties appealed. Because we conclude that the policy unambiguously excludes coverage for both claimed losses, we reverse the district court's denial of summary judgment on the business expenses claim and affirm the grant of summary judgment on the personal property claim.

I.

George's, a poultry processing company with facilities in Cassville, Missouri, has both property insurance and business interruption insurance through Allianz. In January and March 2007, ice storms caused a break in electrical service to George's Cassville plant, which disrupted production and resulted in a loss of business income. The power outage also led to the premature deaths of a number of chickens that were stored in a holding shed before processing. George's filed a claim under the policy, and Allianz conceded liability for lost business income and extra expenses totaling $309,676, minus the deductible.

At issue in this appeal is George's claim for $154,984 of business expenses in the form of fixed labor and overhead costs, and $29,989 in personal property losses from the chickens that perished in its holding shed. According to George's, the labor and overhead costs are recoverable under the "extra expense" portion of the policy. George's undisputed accounting records show that as a result of the business disruption, its cost-per-pound of chicken increased from $.0457 per pound to $.0527—that is, the company produced less chicken relative to its fixed costs.

-2-

George's derived the figure of $154,984 by multiplying its increased cost-per-pound by the number of pounds that it produced during the coverage period. It argued that those costs were recoverable under the following provision:

> **EXTRA EXPENSE**
> 1) Measurement of Loss:
> The recoverable EXTRA EXPENSE loss will be the reasonable and necessary extra costs incurred by the Insured of the following during the PERIOD OF LIABILITY:
> a) Extra expenses to temporarily continue as nearly normal as practicable the conduct of the Insured's business; and
> b) Extra costs of temporarily using property or facilities of the Insured or others, less any value remaining at the end of the PERIOD OF LIABILITY for property obtained in connection with the above.
> 2) EXTRA EXPENSE Exclusions. As respects EXTRA EXPENSE, the following are also excluded:
> a) Any loss of income.
> b) Costs that normally would have been incurred in conducting the business during the same period had no direct physical loss or damage occurred.

The district court concluded that because George's utilizes a cost-per-pound accounting system, an ambiguity existed regarding whether the extra expense provision covered an increase in cost-per-pound. It therefore denied Allianz's partial motion for summary judgment on George's claim for business expenses.

George's also maintained that the personal property provisions of the policy covered its lost chickens. The parties disagreed, however, about the effect of the following two exclusions to the personal property coverage:

> C. animals, standing timber, growing crops.
> . . . .
> O. stock or materials when loss is caused by manufacturing or processing operations which result in damage to such property while being

processed, manufactured, tested or otherwise being worked upon (work in progress).

Allianz contended that the exclusion of animals—expanded in a later exclusion endorsement to "animals (including eggs)"—unambiguously excluded live chickens from coverage. The district court agreed with this interpretation and granted Allianz's partial motion for summary judgment on the claim for the chickens that perished prior to processing.

II.

We review the district court's summary judgment rulings *de novo*, viewing the evidence in the light most favorable to the nonmoving party. Source Food Tech., Inc. v. U.S. Fid. & Guar. Co., 465 F.3d 834, 836 (8th Cir. 2006). The parties agree this case is governed by Arkansas law.

Interpretation of an insurance policy is ordinarily treated as a legal question by Arkansas courts. See Elam v. First Unum Life Ins. Co., 57 S.W.3d 165, 169 (Ark. 2001). When the language of the policy is unambiguous, courts will follow the plain meaning of the policy without resorting to rules of construction. Id. If an ambiguity exists, the policy is construed in favor of the insured and against the insurer. Smith v. Prudential Prop. & Cas. Ins. Co., 10 S.W.3d 846, 850 (Ark. 2000). This rule of construction, however, should not be used to make an insurer liable where the plain language of the insurance contract denies coverage. Smith v. S. Farm Bureau Cas. Ins. Co., 114 S.W.3d 205, 206 (Ark. 2003). Rather, an insurance policy should be construed in its plain, ordinary, and popular sense, and if possible the various clauses of the contract must be read together, so as to harmonize all of the provisions. Id. at 206-07.

## A.

We turn first to George's argument that it is entitled to recover as extra expenses the $154,984 in fixed labor and overhead costs. As discussed above, George's does not dispute that it would have had to pay these labor and overhead costs irrespective of the plant shutdown. Instead, it contends that it experienced an increase in cost-per-pound because the business disruption caused it to process less chicken relative to its fixed expenses. Allianz argues that these fixed expenses fit squarely within the extra expense provision's exclusion of "[c]osts that normally would have been incurred in conducting the business during the same period had no direct physical loss or damage occurred." We agree.

A straightforward reading of the policy language makes it clear that the extra expense provision was intended to cover unanticipated outlays related to a business disruption. Fixed labor and overhead costs do not fit that description. The extra expense provision is focused instead on unforseen expenditures such as overtime pay or additional expenses associated with using different facilities, both of which Allianz concedes are covered. George's argues that because the term "costs" is not defined in the policy, coverage for its extra expenses might reasonably be understood to include an increase in cost-per-pound. It contends that the increased cost-per-pound is not a normal cost incurred in conducting its business, because the increase is directly attributable to the interruption caused by the ice storms. George's further urges that its interpretation of the policy is augmented by the general accounting practices of the poultry industry, wherein expenses are commonly expressed in terms of cost-per-pound.

We find George's argument to be unpersuasive. A term in an insurance policy is not ambiguous simply because it is undefined. See Smith, 114 S.W.3d at 207. Looking only at the words themselves, the ordinary meaning of "costs" is distinct from the concept of "cost-per-pound," which as its wording suggests, is an equation

-5-

representing the relationship between cost and total production. A company's overall expenditures do not necessarily increase simply because it experiences an increase in the per-unit cost of its product. But as George's interprets the policy, it would incur an extra expense any time that it slowed or stopped production. Moreover, the terms in the policy must be interpreted in context, and the exclusion of costs that "normally would have been incurred in conducting the business" plainly precludes recovery of fixed costs. Although it is undisputed that George's uses a cost-per-pound allocation in its own accounting, that is not the language used in the contract. When, as here, the language of an insurance policy is clear, it is improper for a court to "strain the construction of ordinary terms in the contract to create ambiguity where one does not appear." Arkansas Burial Ass'n v. Dixon Funeral Home, Inc., 751 S.W.2d 356, 357 (Ark. App. 1988).

Our interpretation also harmonizes the various provisions in the policy. At bottom, George's claim is one for lost production, not increased expenses; in George's own words, "[f]ewer birds processed results in larger labor and overhead cost per pound to operate a processing plant." Appellee's Br. 16. The purpose of business interruption insurance is to put the insured in the financial position that it would have occupied if the covered peril had not occurred. See Associated Photographers, Inc. v. Aetna Cas. & Sur. Co., 677 F.2d 1251, 1253 (8th Cir. 1982). Conceptually, there are two components to such indemnification: payment for losses in gross earnings and compensation for unanticipated expenses. The present policy contains separate, mutually exclusive provisions addressing both categories of liability. The formula for indemnifying losses in gross earnings—which is not at issue here—does not include additional, unforseen expenses caused by an insured event; and conversely, the provision covering extra expenses explicitly excludes "[a]ny loss of income." By reading the extra expense provision to cover what is actually a claim for lost production, however, George's interpretation eliminates the distinction between the two provisions, suggesting that one is superfluous. We think the various provisions of the policy are best harmonized by reading the extra expense provision to exclude

-6-

coverage for a decrease in production relative to fixed costs.  Accordingly, the district court erred in denying Allianz's motion for summary judgment on this claim.

B.

George's also claims that the policy's personal property coverage entitles it to recover the $29,989 in losses that it sustained from chickens that died in its holding shed prior to processing.  As discussed above, the personal property coverage excludes "animals (including eggs)."

In an attempt to avoid the clear import of this exclusion, George's argues that the chickens in its holding shed should be treated as processing stock and thus subjected only to the more-limited work in progress exclusion.  George's contends that there is a jury question on whether, under the terms of the policy, the chickens ceased to be animals and became stock or materials when transported to its factory for processing.  It cites for support <u>Dyer v. Royal Ins. Co.</u>, 150 A.2d 915 (Md. 1959), in which the Court of Appeals of Maryland concluded that an exclusion for "growing crops" applied to barley that was still standing in a field but no longer growing.  According to George's, <u>Dyer</u> suggests that farm goods change their character when taken off the farm.  Whether or not that is a fair characterization of the holding in <u>Dyer</u>, it is clear that the term "animals" includes live chickens, regardless of their location.  The policy makes no distinction based on the animals' proximity to the processing facility, and we will not add a condition that is unsupported by the plain language of the contract.

Alternatively, George's maintains that the existence of both the animal exclusion and the work in progress exclusion creates an ambiguity regarding which exclusion should apply.  This argument mistakenly assumes that there is a conflict whenever multiple exclusions may apply to the same claim.  The presence of two or more potentially overlapping exclusions, however, is unremarkable.  A problem would

arise only if there were a conflict between an exclusion and a specific grant of coverage. Because chickens clearly fall into the policy's exclusion of animals, it is immaterial whether the work in progress exclusion might also apply and to what extent it would limit Allianz's liability. Accordingly, the district court did not err in granting Allianz summary judgment on the claim for lost chickens.

## III.

The grant of summary judgment on the personal property claim is affirmed. The denial of summary judgment on the business expenses claim is reversed, and the case is remanded to the district court for entry of judgment dismissing that claim.

_____