# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 21-2712

———————————————

Grinnell Mutual Reinsurance Company

*Plaintiff - Appellee*

v.

Dingmann Brothers Construction of Richmond, Inc.

*Defendant*

Great Lakes Insurance SE, formerly known as Great Lakes Reinsurance (UK) SE; MNDKK, LLC

*Defendants - Appellants*

——————

Appeal from United States District Court
for the District of Minnesota

——————

Submitted: March 15, 2022
Filed: May 18, 2022

——————

Before GRUENDER, BENTON, and ERICKSON, Circuit Judges.

——————

GRUENDER, Circuit Judge.

MNDKK, LLC's insurer, Great Lakes Insurance, sent subrogation demands through an assignee to Dingmann Brothers Construction due to alleged dust-related

property damage. Grinnell Mutual Reinsurance Company, Dingmann's insurer, commenced a declaratory-judgment action to determine coverage under the insurance policy issued to Dingmann. The district court granted Grinnell's motion for summary judgment, holding that two policy exclusions unambiguously apply due to the presence of silica in the dust and that coverage is foreclosed.[1] MNDKK and Great Lakes appeal.

## I.

MNDKK hired Dingmann to install a garage door in its building. Dingmann's subcontractor dry cut the wall without using dust protection, and the resulting dust covered the inside of the building and its contents. The dust was cleaned up before it could be tested, but the wall from which the garage door was cut tested positive for silica.[2] MNDKK submitted a first-party claim to its insurer, Great Lakes Insurance, for clean-up costs and property damage. Great Lakes paid MNDKK's claim and its assignee sent subrogation demands to Dingmann, stating that the damages were from "concrete dust" after "[c]oncrete dust was spread throughout the entire 10,000 square foot building and covered all of the items in the store." Grinnell refused to indemnify Dingmann, claiming that two exclusions in Dingmann's insurance policy applied due to the presence of silica in the dust. The "Silica or Silica-Related Dust" exclusion bars from coverage, in relevant part:

---

[1]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

[2]Silica is a well-known hazard to human health. Occupational Safety & Health Admin., Pub. No. 3902-07R, Small Entity Compliance Guide for the Respirable Crystalline Silica Standard for Construction (2017), www.osha.gov/sites/default/files/publications/OSHA3902.pdf (explaining that silica has been shown to cause "adverse health effects including silicosis, lung cancer, chronic obstructive pulmonary disease, and kidney disease"); *see also* 29 C.F.R. § 1926.1153 (stating OSHA regulations for respirable crystalline silica).

b. "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

c. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

The "Asbestos, Lead, and Silica or Silica-Related Dust" exclusion similarly bars from coverage, in relevant part:

2. "Property damage" arising, in whole or in part, out of the actual, alleged, threatened, or suspected contact with, exposure to, existence of, or presence of, "silica", "silica-related dust", or "silica" included as a constituent part of a product, such as, but not limited to, paint, brick, tile, gravel, concrete, fiberboard, and residential or commercial construction materials;

. . .

4. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica", "silica-related dust", by any insured or by any other person or entity[.]

Both exclusions—one drafted by ISO Properties, Inc. and the other by Grinnell— have identical definitions of "silica," "silica-related dust," and "property damage." "'Silica' means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds." "'Silica-related dust' means a mixture or combination of silica and other dust or particles." "Property damage" is defined as including "loss of use."

After Grinnell refused to indemnify Dingmann, Great Lakes filed a subrogation action in Minnesota state court against Dingmann, and Grinnell defended the action. Grinnell meanwhile commenced this declaratory-judgment action to determine coverage, specifically to confirm that it did not have a duty to indemnify Dingmann under the insurance policy. Dingmann and Great Lakes settled the state court action through a *Miller-Shugart* agreement, meaning that Dingmann dropped out of the litigation and Great Lakes agreed to collect a stipulated judgment from Grinnell rather than from Dingmann itself. *See Miller v. Shugart*, 316 N.W.2d 729 (Minn. 1982). After the settlement, Grinnell amended its complaint to seek a declaration that the *Miller-Shugart* agreement was unenforceable. Then Great Lakes filed a garnishment motion against Grinnell in the state court proceeding, which was converted into a garnishment action, and Grinnell removed the case to the federal district court. The garnishment action was stayed pending resolution of this declaratory-judgment action. The parties both moved for summary judgment, and the district court granted summary judgment to Grinnell, holding that the exclusions unambiguously apply due to the presence of silica and that coverage is foreclosed. MNDKK and Great Lakes appeal.

## II.

We review the district court's resolution of cross-motions for summary judgment *de novo*. *Lexicon, Inc. v. ACE Am. Ins.*, 634 F.3d 423, 425 (8th Cir. 2011). Summary judgment in favor of Grinnell is appropriate if, after viewing the evidence in the light most favorable to Great Lakes and affording Great Lakes all reasonable inferences, there are no genuine issues of material fact and Grinnell is entitled to judgment as a matter of law. *See id*.

In this diversity case, the parties agree that Minnesota substantive law applies. *See Barry v. Barry*, 172 F.3d 1011, 1013 (8th Cir. 1999). Under Minnesota law, insurance policies "must be construed as a whole, and unambiguous language must be given its plain and ordinary meaning," *Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins.*, 383 N.W.2d 645, 652 (Minn. 1986), including exclusions, *see*

*Latterell v. Progressive N. Ins.*, 801 N.W.2d 917, 922 (Minn. 2011). "In Minnesota, a party claiming insurance coverage bears the burden of establishing that coverage applies; the insurer bears the burden of proving the applicability of exclusions." *Westfield Ins. v. Advanced Auto Transp., Inc.*, 11 F.4th 860, 863 (8th Cir. 2021).

The defendants argue that the two exclusions do not apply, meaning Grinnell is responsible for covering the cost of the property damage caused by the dust. Grinnell, on the other hand, argues that it is not responsible for the cost because the exclusions do apply.

A.

To decide whether the exclusions apply here, we must first determine whether there is a genuine issue of material fact about whether the dust contained silica. We conclude that there is not. The dust that was cleaned up was not tested. However, Grinnell's experts tested the wall around the existing garage door, which was the origin of the dust. After a visual inspection, the experts concluded that the wall and any dust coming from it contained silica, and after testing samples from the wall, they concluded that "'silica' as defined by the policy" was present and therefore "would have been present in the dust generated when [the garage-door] opening was cut." The defendants did not contest that Grinnell's experts tested the wall and observed silica, nor did they present an expert of their own. We therefore conclude that there is no genuine dispute of material fact about whether the dust contained silica.

B.

Next, we address the defendants' argument that the cleanup provision does not apply. The cleanup provision of the Silica or Silica-Related Dust exclusion bars from coverage "[a]ny loss, cost or expense arising, in whole or in part, out of the . . . cleaning up, removing, . . . or in any way responding to or assessing the effects of,

silica' or 'silica-related dust.'"[3]  The defendants argue that the cleanup provision does not apply because the damage here was due to silica or silica-related dust itself, not its effects.  According to the defendants, there is a misplaced comma between "effects of" and "silica."  On this reading, "effects of" is part of the noun phrase that is the direct object of the series of verb phrases "cleaning up, removing, . . . or in any way responding to or assessing" rather than part of the last verb phrase in that series.  In other words, according to the defendants, it is a mistake to read the relevant portion of the provision as applying to cleaning up silica or silica-related dust, removing silica or silica-related dust, and otherwise responding to or assessing the effects of silica or silica-related dust.  Instead, the relevant portion of the provision applies only to cleaning up the effects of silica or silica-related dust, removing the effects of silica or silica-related dust, and otherwise responding to or assessing the effects of silica or silica-related dust.

We disagree.  The comma before "silica" indicates that the phrase "the effects of" belongs with the phrase immediately preceding it, rather than with "'silica' or 'silica-related dust.'"  So, the last verb phrase in the series is "or in any way responding to or assessing the effects of," and the comma separates the series from the noun phrase that is its direct object.  This interpretation makes sense of the text as written because it would be difficult to separate losses due to silica from losses due to the effects of silica.  "While matters like punctuation are not decisive of the construction of a statute, where they reaffirm conclusions drawn from the words themselves they provide useful confirmation."  *City of Oronoco v. Fitzpatrick Real Estate, LLC*, 883 N.W.2d 592, 595 (Minn. 2016) (brackets omitted).  Further, as Grinnell argues, it is unlikely that the comma is a scrivener's error because it occurred in two separate policy exclusions drafted by two separate entities.

---

[3]The "Asbestos, Lead, and Silica or Silica-Related Dust" exclusion includes identical language except it contains a comma between "silica" and "silica-related dust" instead of the word "or."

C.

We next address the defendants' argument that the property-damage provision does not apply here. The property-damage provision of the Silica or Silica-Related Dust exclusion also bars coverage for "'[p]roperty damage' arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, 'silica' or 'silica-related dust.'"[4] The parties agree that "property damage" occurred from the dust.

The defendants argue that only one of the two provisions can apply, and, here, it must be the cleanup provision because it is more specific. "This argument mistakenly assumes that there is a conflict whenever multiple exclusions may apply to the same claim. The presence of two or more potentially overlapping exclusions, however, is unremarkable." *George's Inc. v. Allianz Glob. Risks U.S. Ins.*, 596 F.3d 989, 994 (8th Cir. 2010). There would be a problem "only if there were a conflict between an exclusion and a specific grant of coverage." *Id.* We have held that overlapping provisions can exist in an insurance policy because "[n]othing prevents [insurers] from using a 'belt and suspenders' approach in drafting the exclusions, in order to be 'doubly sure.'" *In re SRC Holding Corp.*, 545 F.3d 661, 670 (8th Cir. 2008).

D.

Lastly, the defendants claim that there is no "causal connection between the existence of silica and the damages" and therefore the provisions do not apply. The clean-up provision covers costs "arising, in whole or in part, out of the cleaning up . . . or in any way responding to or assessing the effects of, 'silica' or 'silica-related dust.'" *See Faber v. Roelofs*, 250 N.W.2d 817, 822 (Minn. 1977) ("The words 'arising out of' mean causally connected with, not 'proximately caused by'

---

[4]The relevant language in the "Asbestos, Lead, and Silica or Silica-Related Dust" exclusion is nearly identical.

use."). "The phrase 'arising out of' has been given broad meaning by Minnesota courts." *Murray v. Greenwich Ins.*, 533 F.3d 644, 649 (8th Cir. 2008) (citation omitted). For example, it has "been held to mean originating from, or having its origin in, growing out of, or flowing from, and has been accorded an equally broad reading when used in an exclusion to limit coverage." *Id.* at 650. Here, there is a causal connection. The property damage claimed by the defendants is the "loss of use" that arose out of "the actual . . . contact with, . . . or presence of, . . . 'silica-related dust.'" And the resulting clean up of "silica-related dust" arose out of the "actual . . . contact with, . . . or presence of, . . . 'silica-related dust.'" We therefore conclude that both the cleanup and property-damage provisions apply.[5]

### III.

For the foregoing reasons, we affirm the district court's grant of summary judgment to Grinnell.

—————————————————

---

[5]The defendants argue that, because MNDKK removed the dust "without regard to" the hazards of silica, Grinnell cannot show a causal connection. As the district court ruled, this interpretation violates Minnesota's "non-technical, plain-meaning approach to interpreting pollution exclusions." *See Midwest Fam. Mut. Ins. v. Wolters*, 831 N.W.2d 628, 637 (Minn. 2013) (internal quotation marks omitted). Here, the exclusions plainly refer to "silica-related dust," not dust known to contain silica and regarded as such.