William B. Lawless, J.
Plaintiff insurance carrier brings this action for declaratory judgment to determine its rights against its assured, the defendant Richard Passalacqua. Plaintiff urges this court to hold that there was no coverage inuring to any of the defendants herein under a family combination policy of automobile liability insurance issued by plaintiff to Richard Passalacqua and his wife for the period “ March 30, 1959 to March 30, I960.”
On September 13, 1959, defendant Crane was struck by an automobile owned by defendant Elio Di Muro and operated by defendant Richard Passalacqua with the permission of the defendant Elio Di Muro. As a result Crane sustained serious bodily injury and thereafter brought an action against the defendants Passalacqua and Di Muro. Thereafter plaintiff instituted this action for declaratory judgment. The Crane action is awaiting trial in this court,
*628 Plaintiff admits that its policy provides indemnity to Passalacqna for liability he sustains “ arising out of the * * * use of the owned automobile or any non-owned automobile ’ ’ but denies that it is liable to indemnify Passalacqua at a time when he was operating Di Muro’s automobile because the Di Muro automobile was neither owned by the insured nor was it a “non-owned” automobile within the terms and provisions of the policy in question. Plaintiff takes this position in view of the policy which provides:
‘ ‘ Persons Insured. The following are insureds under Part I:
“ * * * (b) With respect to a non-owned automobile,
“ (1) the named insured,
“ (2) any relative, but only with respect to a private passenger automobile or trailer, provided the actual use thereof is with the permission of the owner;
# * #
“‘Non-owned automobile’ means an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile.
“ ‘ Relative ’ is defined to mean ‘a relative of the named insured who is a resident of the same household. ’ ’ ’
Plaintiff contends that the Di Muro auto was not a ‘ ‘ non-owned automobile ’ ’ when operated by Passalacqua because (1) it was owned by Di Muro, a “ relative ” of the Passalacquas who was a resident of the Passalacqua household and (2) it was not a “ temporary substitute automobile ” as defined by the policy, viz., any automobile not owned by the insured, while temporarily used as a substitute for the owned automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.
Plaintiff further contends that the policy recognizes coverage with respect to three types of automobiles: “ owned”, “non-owned” and “not covered”. (The “not covered” category is the name given by counsel to those not included in the definition of either “ owned ” or “ non-owned.” It is not included in the language of the policy. See G-ouldin, Who is the Insuredf, N. Y. Bar Bull., Dec. 1959, pp. 364, 368.) It is argued that this is a case of a “ not covered ’ ’ automobile.
Whether DiMuro’s automobile, driven by Passalacqua, was a “non-owned” automobile under the policy depends on two facts:
(1) Whether Di Muro was “related” to Mr. or Mrs. Passalacqua and
*629 (2) Whether Di Muro was a resident of the Passalacqua household at the time of the accident.
I
RELATIONSHIP
The relationship between Passalacqua and Di Muro arises out of the fact that Di Muro’s wife’s mother is a sister of the defendant Passalacqua’s wife. Obviously they are not related by blood. The question is whether they are otherwise related within the meaning of the word “ relative ” in the policy. Unfortunately, the policy itself provides an idem per idem definition. It says “ relative means a relative of the named insured who is a resident of the same household.”
Webster’s New International Dictionary (2d ed., 1953) defines a “ relation ” to be “ A person connected by consanguinity or affinity; a relative-, a kinsman or kinswoman; specif., as technically construed in law (as in the interpretation of wills, statutes affecting the descent of property, etc.), a person who in case of intestacy would be entitled to a share of the property of the intestate * * * Thus, the word not only varies in its inclusiveness according to the terms of the statute in question, hut may also, according to the evident intent of the user, he construed more or less widely as meaning next of kin, relations hy hlood, or family relations, whether hy hlood or marriage.” (Emphasis supplied.)
If Passalacqua and Di Muro are ‘ ‘ related ’ ’, it must be through marriage since admittedly they are not of the same blood line. In matters of descent and distribution the courts have generally held that where relationship by affinity exists, it is by virtue of a marriage between one party to that marriage and the blood relatives of the other party to the marriage.
In Zambetti v. Garton (113 N. Y. S. 804 [1908]) the court held in effect that a man is not related by affinity to the husband of his wife’s sister. This case interpreted section 46 of the Code of Civil Procedure.
In Preferred Acc. Ins. Co. of N. Y. v. Onali (125 F 2d 580) the court held that a sister-in-law is not a relative. It construed the policy in the sense most favorable to the assured (p. 582). In Tolson v. National Provident Union (60 Misc. 460, affd. 130 App. Div. 884, affd. 198 N. Y. 535), the court held that the brother-in-law of the insured’s deceased wife was a “ relative ” of the insured within the meaning of the insurance policy. In the Tolson case the court was construing the by-laws of a fraternal benefit association. It stated (p. 463): “ This court *630 is of opinion that the word ‘ relative ’ as used in the by-laws of the defendant is broad enough to cover persons connected by affinity.” It distinguished the definition applied in construing wills.
These cases demonstrate that there is not a single and precise definition of a “ relative ”. The word has a flexible meaning and should be interpreted in the light of the context in which it is employed. (Cooney v. Cooper, 143 F. 2d 312, 314.) In the family combination liability policy before us the company chose to define the word by restating the word itself. It could have restricted its definition to the blood line or it could have given it broader application within degrees of kindred. It chose to do neither. Since the word is ambiguous in its use in the policy, we conclude that it should be construed in that sense which is most favorable to the assured. (Preferred Acc. Ins. Co. of N. Y. v. Onali, 125 F. 2d 580, 582, supra.) Further, an insurance carrier has the burden of proof in establishing an exclusion from the basic coverage of the policy. (Fiorillo v. Central Ins. Co. of Baltimore, 267 App. Div. 220.) We find that Elio Di Muro was not a “ relative ” of Mr. or Mrs. Bichard Passalacqua within the meaning of the policy before us.
n
HOUSEHOLD
Although it is not necessary for the court to proceed to the question of fact presented, viz., whether. Di Muro was a ‘ ‘ resident ” of the Passalacqua household at the time of the accident, we deem it wise to do so for the record in view of the extensive proof taken at the trial.
The collision between Passalacqua and Crane occurred on September 13,1959. On July 18, 1960, defendant Elio Di Muro gave an unsworn statement to plaintiff’s representative in which he admitted that he “ lived with ” Passalacqua at 3210 Michigan Avenue, Niagara Falls, New York, when he went up to Niagara Falls from Bochester on June 15, 1958. Di Muro listed Passalacqua’s home address in his operator’s license and he gave that address on his income tax return and withholding statements for the period in question. At an examination before trial on November 18, 1960, Di Muro testified under oath that when he came to work for Passalacqua in June of 1958 he “ lived at the motel”. He claimed that when his wife and children visited him from Bochester they would stay “ at the apartment at the motel ”. When confronted with his prior statement that he lived at 3210 Michigan Avenue, Di Muro testified at the exami *631 nation before trial that he “ wouldn’t know if these were the same questions and answers.”
Elio Di Muro did not testify personally on the trial but his examination before trial and statement were put in evidence by plaintiff.
On May 27, 1960, defendant Passalacqua, at an examination before trial, testified under oath that “ [Di Muro] lives at 3210 Michigan Ave. He lives with me ”.
Defendant Passalacqua similarly made an unsworn statement to a representative of plaintiff on July 18, 1960 in which he admitted that Di Muro lived with him at 3210 Michigan Avenue while he was working for him. Later he said that Di Muro’s entire family lived with him for a period of time. He did not specify the exact time but it was obviously during his period of employment.
At an examination before trial on November 18,1960, defendant Passalacqua testified under oath that Di Muro occupied a room at the motel and denied that Di Muro ever lived at Michigan Avenue. Passalacqua testified that when the Di Muro family came from Bochester they stayed in an apartment at the motel.
On the trial defendant presented the testimony of both Mrs. Passalacqua and Mrs. Di Muro to the effect that defendant Di Muro did not reside at 3210 Michigan Avenue. This was corroborated by a neighbor. They also offered the testimony of numerous tradesmen with whom defendant Passalacqua does business to show that Di Muro in fact lived in Boom No. 8 at the motel operated by Passalacqua. These witnesses testified that they saw bim sleeping in this room, that he kept his clothing there and that he could generally be found there to sign receipts for merchandise. The public accountant who prepared the income tax return for Di Muro corroborated the testimony of Mrs. Passalacqua that she gave him Di Muro’s address as 3210 Michigan Avenue.
In weighing all the proof on the question of Di Muro’s residence, including inconsistent statements of two parties defendant, we conclude that plaintiff failed to prove by a fair preponderance of the evidence that Di Muro resided in the Passalacqua household on and before September 13, 1959.
HI
OOnCLUSIOB"
In view of our finding of law that Passalacqua and Di Muro are not related and in view of our finding of fact that plaintiff *632 failed to prove that Di Maro resided with the assured at the time of the accident, it follows that plaintiff’s prayer for relief herein is denied.
We find affirmatively that there was liability insurance coverage inuring to the benefit of the defendant Richard Passalacqua at the time of the collision which occurred on the 13th day of September, 1959 between Passalacqua and John C. Crane. We determine and declare that by virtue of said policy, the plaintiff is liable to the defendant Richard Passalacqua for the payment of that part of any judgment that may be rendered in the action brought by said Crane against him in excess of the amount of the limits of the primary liability policy inuring to the benefit of defendant Elio Di Muro.