297 F.2d 230
 FIDELITY AND CASUALTY COMPANY OF NEW YORK, Appellant,
v.
Corbett Garfield JACKSON, James Edward Floyd and Leonard
Britt, Administrator of the Estate of James Edward
Britt, Deceased, Appellees.
 No. 8428.
 United States Court of Appeals Fourth Circuit.
 Argued Oct. 3, 1961.
Decided Nov. 10, 1961.
 
 I. Edward Johnson, Raleigh, sN.C. (C. Woodrow Teague, Grady S. Patterson, Jr., and Teague, Johnson & Patterson, Raleigh, N.C., on the brief), for appellant.
 Wesley C. Watts and John S. Gardner, Lumberton, N.C. (Watts & Gardner, Lumberton, N.C., on the brief), for appellee, Leonard Britt, Adm'r, etc.
 Before SOPER, BRYAN and BELL, Circuit Judges.
 BRYAN, Circuit Judge.
 
 
 1
 The primary question here presented is whether, within the meaning of the automobile liability policy issued to Corbett Garfield Jackson by the plaintiff Fidelity and Casualty Company of New York, the mother-in-law of the insured is his 'relative'. The policy, written on Jackson's Pontiac car, excepts from its liability coverage in Part I all obligation to defend and indemnify him against any claim for damages arising from his operation of an automobile owned by a 'relative' residing with him in 'the same household'. While driving the car of his mother-in-law who lived in the same house as did he and his family, Jackson had an accident giving rise to claims against him. The Company brought this action for a declaratory judgment to the effect that the insured in these circumstances was not protected by the policy.
 
 
 2
 The judgment of the District Court from which the Company now appeals decreed that Jackson's mother-in-law was not his 'relative' in the terms of the policy. The Court found the word to be capable of two constructions, and invoking the rule that the policy must be construed to favor the insured, held that the plaintiff Company was not entitled to exoneration from coverage under Part I of the policy.
 
 
 3
 The question was posed in the frame of the follwing agreed facts (in addition to the stipulations of the policy just stated.) While driving his mother-in-law's Ford car Jackson ran into a bridge abutment along a public road in Robeson County, North Carolina, injuring James Edward Floyd and causing the death of James Howard Britt, both of whom were passengers in the car. Civil actions against Jackson to recover monetary damages for this injury and death have been commenced in the appropriate North Carolina court by the injured Floyd and James Britt's administrator, Leonard Britt. In view of this litigation and these claims, the Company asked the court below to declare its freedom from responsibility as insurer, naming Floyd, Britt's administrator and Jackson as defendants.
 
 
 4
 I. The word 'relative' denotes both those connected to a person by blood and those connected by marriage. The Oxford Dictionary defines a relative as 'One who is connected with another or others by blood or affinity'. Vol. VIII (1933 ed.) at p. 397. According to Webster's New Collegiate Dictionary (1959 ed.), a relative is 'A person connected with another by blood or marriage; a kinsman or kinswoman'. Clearly, it is a more comprehensive term than 'kin': it embraces kin, kinfolk and kindred-- those 'descended from a common ancestor'-- as well as in-laws. Oxford, supra, Vol. V at p. 696. Whether in a particular place it connotes both affines and consanguines, or one or the other, must depend upon its verbal and factual environs.
 
 
 5
 Thus, merely because it has a broad meaning the word is not necessarily indefinite. The insurer was not writing inexactly when in its policy it withheld insurance from a policyholder while he was operating the car of a 'relative'. There was no reason the Company could not, if it chose, expand the exception so as to describe both blood and affined relations. And if that was the intent of the scrivener, the court is not free to give the exception a lesser import. For to narrow the exclusion by interpretation and confine 'relative' to those having a relationship by birth or descent merely because that would bring the insured and the tort claimants within the policy would, without more, be an unjustified reformation of the instrument. The rule of construction permitting the reading of a contract in strictness against the draftsman, here the Company, applies only when more than one intendment may appear in the document. No such ambiguity appears here, for the word is sharply qualified by other phrases in the policy and the purpose of the exception which-- to-gether with the circumstances of this case-- all clarify the noun.
 
 
 6
 Initially it is argued that if 'relative' embodies all persons having a relationship to the insured through marriage, the effect is so to enlarge the exemption as to include car owners only barely and remotely touching the insured through affinity. The implication is that this possibility renders the exception unenforceable as unreasonable. Assuming it would be a valid objection in law, the answer here is immediate and twofold. Primarily, a son-in-law and a mother-in-law are about as close as in conceivable in degree of affinity. The apprehended danger of undue extension of the exception is here only hypothetical. Secondly, the latitude of the stipulation is severely straitened by the further requirement that the 'relative' be 'a resident of the same household' as the insured.
 
 
 7
 The evidence, as the District Court has found it, quite satisfyingly proves a common residence of Jackson and his wife's mother. They occupied the same house as an undivided shelter' they shared the same kitchen, bathroom and laundry facilities. The Jacksons paid no rent, though they did provide the groceries for the table and furnish the lights and water. The three had their meals together several times weekly, and only the different employment hours of Jackson and his wife prevented more frequent gatherings at table. The Jacksons, furthermore, had moved into the mother-in-law's home because after the death of her husband she could not live alone. Unquestionably they were all 'members of the same domestic circle'. State Farm Mut. Auto. Ins. Co. v. James, 80 F.2d 802 (4 Cir.1936).
 
 
 8
 The obvious aim of the exception in the policy was to deny to an insured coverage through a single policy of other cars which presumably would be readily and regularly available to him because the owners were of his immediate household. Jackson's policy was already protecting the permissive use of his car by all the other members of the domestic circle. Avoidance of overloading of the policy, the Company evidently believed, could best be accomplished by bringing all of the other vehicles of the household under the exceptive proviso. Plainly, then, 'relative' was employed in its widest concept. The scheme of the insurance may be noticed in ascertaining the usage of the words in a policy. State Farm Mut. Auto. Ins. Co. v. James, supra, 80 F.2d at 802.
 
 
 9
 That this is also the practical rendering of 'relative' here is demonstrated by one of the results which would follow under the opposite conclusion. If in the exception the word refers only to a blood relation, then the wife of the insured, is also made an insured by the policy, would not be shielded by the policy while driving her mother's For, inasmuch as she is of the blood of the owner; but if the insured husband were driving that car the policy would save him harmless. To summarize, in the circumstances of this case, the term 'relative' cannot be said to be uncertain in defining what non-owned cars are not covered by the policy.
 
 
 10
 Our conclusion is not at odds with the authorities with which Corbett Jackson and the defendant claimants shore their arguments. In keeping with the guide we have adopted, these precedents accord 'relative' its broad sense and constrict its meaning only as commanded by the facts of the liability-event, by the limiting phrases of the policy and by the object of the exception.
 
 
 11
 Preferred Accident Ins. Co. v. Onali, 125 F.2d 580 (8 Cir.1942) found a sister-in-law not to be a 'relative' of her brother-in-law. But there the policy revealed quite pointedly by its history as well as in its own words that 'relative' was not to include a sister-in-law. Originally the policy excluded 'any relative' from coverage. However, a renewal in effect at the time of the claimed loss enumerated the relatives excepted, and a sister-in-law was not in the list. True, the Court found that according to the unamended terms of the policy 'relative', strictly construed, did not include an in-law, but there the Court was speaking obiter. Furthermore, the word was not qualified by the phrase 'of the same household'.
 
 
 12
 Dalton v. White, 129 F.2d 55, 56 (D.C. Cir. 1942) involved the construction of a bequest. The Court observed that 'Broad words like 'relatives' are often interpreted, when there is no evidence of a different intention, as limited to next of kin; those relatives who would be entitled to take on intestacy'. Ordinarily, in matters of descent, distribution and devise, the law would expect the decedent to intend as his beneficiaries his blood kin rather than persons who are not his descendants or collaterals. But this again underscores our thesis that the circumstances, the modifying wording and the writing's object circumscribe the implications of the term.
 
 
 13
 Cooney v. Cooper, 143 F.2d 312 (8 Cir.1944), from which the insured and the claimants quote, held that 'relative' in a certificate of a fraternal benefit association did not include the son of a brother of the insured member's wife.
 
 
 14
 This conclusion was grounded, as in Preferred Accident Ins. Co. v. Onali, supra, upon a specific enumeration of those in-laws who might take under the insurance certificate, and a nephew-in-law was not one of them. The most apposite of the defendants' citations, Indiana Lumbermens Mut. Ins. Co. v. Passalacqua, 211 N.Y.S.2d 62, 64 (Sup.Ct.Eq. Niagara County, 1961), considered a policy affording an automobile driver insurance unless at the time of the critical incident he was driving the car of a 'relative' who was 'a resident of the same household'. The automobile the insured was there operating belonged to the husband of the niece of the insured's wife. The Court rejected the insurer's prayer for exemption, holding the insured and the niece were not relatives.
 
 
 15
 This determination is quickly distinguishable upon its facts. The close affinity we have before us was not present there. Furthermore, there was no common residence of the in-laws and, hence, the fear of an unfair, multiple liability upon a single policy justifying the exception was absent.
 
 
 16
 In fine, the meaning of 'relative' is amply delimited by the close affinity between the insured Jackson and his mother-in-law, by the restrictive phrase 'of the same household' and by the plan of the policy, and so the word lies beyond the need for judicial interpretation.
 
 
 17
 II. Estoppel is laid to the insurer by the insured and his co-defendants to forestall the insurer's denial of obligation to them. This defense rests upon the insurer's payment to Floyd and to Britt's administrator of certain of their medical expenses following the accident. These advances were made under Part II, Coverage C, of the policy, wherein Fidelity agreed
 
 
 18
 'to pay all reasonable expenses incurred * * * for necessary medical * * * services * * *
 
 
 19
 'Division 2. To or for any other person who sustains bodily injury, caused by accident, while occupying * * * (b) a non-owned automobile, if the bodily injury results from (1) its operation or occupancy by the named insured * * *'.
 
 
 20
 Admittedly, under this part of the policy as under Part I, a 'non-owned automobile' does not include a car owned by 'a relative of the named insured who is a resident of the same household'. Accordingly, it is urged that the payment by the insurer under Part II manifests an estoppel, in that this reimbursement of the occupants of the car in question is a tacit confession that the policy comprehended the named insured's use of that car.
 
 
 21
 This assertion cannot succeed. Part II of the policy is an unconditional and direct insurance of the injured person. In Part I, the liability indemnity provisions are dependent upon the precedent establishment of the insured's responsibility for the accident. Clearly, payment under Part II Coverage C springs from an obligation altogether different from the promise of the insurer, in Part I, to save the insured harmless from a claim contingent upon a determination of his liability. Compliance with the absolute insurance of Part II does not, therefore, evince a confession of liability under Part I. Snyder v. Nat'l Union Indem. Co., 65 F.2d 844 (10 Cir.1933).
 
 
 22
 Conclusive, however, of the futility of the charge of estoppel is the policy's Condition 7. Referring especially to Part II, the last sentence of this condition provides: 'Payment hereunder shall not constitute an admission of liability of any person or, except hereunder, of the company.'
 
 
 23
 III. The final argument of the insured and the two other defendants, which the District Court found it unnecessary to consider, is this:
 
 
 24
 The policy in suit was issued by Fidelity pursuant to the Motor Vehicle Safety and Financial Responsibility Act of 1953, N.C.Gen.Stat. Secs. 20-279.1 to 20-279.39 (Supp.1959) and The Vehicle Financial Responsibility Act of 1957, N.C.Gen.Stat. Secs. 20-309 to 20-319 (Supp.1959). Such a policy, the statute declares at Sec. 20-279.21(c): 'shall insure the person named as insured therein against loss from the liability imposed upon him by law for damages arising out of the use by him of any motor vehicle not owned by him * * *.' The contention of the insured and claimants is that the instant policy's exception of a relative's car cannot stand, for it is contrary to this State statute (citing Indiana Lumbermens Mut. Ins. Co. v. Parton, 147 F.Supp. 887, 889 (M.D.N.C.1957)).
 
 
 25
 Fidelity, Jackson's insurer, conunters as follows. Jackson's mother-in-law held a policy of the North River Insurance Company, issued under and in every respect in compliance with the North Carolina acts, and this policy is primarily answerable for Jackson's negligent driving. Fidelity's responsibility is excess insurance, and the North Carolina statutory provision, N.C.Gen.Stat. Sec. 20-279.21, supra, is not applicable, since the same statute relieves from its exactions such insurance as is in excess of the minimum required by the law and here provided by the North River policy. For this position Fidelity relies upon Swain v. Nationwide Mut. Ins. Co., 253 N.C. 120, 116 S.E.2d 482 (1960) and Muncie v. Travelers Ins. Co., 253 N.C. 74, 116 S.E.2d 474 (1960).
 
 
 26
 We cannot decide this issue now. Unresolved of course by the District Court, the decision is dependent upon factual determinations, such as whether Jackson's use of his mother-in-law's automobile was with or without her permission or was for other reasons within or without the aegis of her policy. Furthermore, as North River is not a party to this action, our judgment on these matters at this stage would not be conclusive. The determination, therefore, must be made either in separate litigation with North River or in this action after it is impleaded herein.
 
 
 27
 The judgment of the District Court must be overturned and the action returned for trial in accordance with the views expressed herein.
 
 
 28
 Reversed and remanded.