Mary Ann **VERNATTER**, Appellant,

v.

**ALLSTATE INSURANCE COMPANY**, an Illinois Corporation, Appellee.

No. 10133.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 4, 1966.

Decided June 13, 1966.

Meredith A. House, Richmond, Va., and William G. Geyer, Jr., Baltimore, Md. (Purcell, House & Cherry, Richmond, Va., on brief), for appellant.

F. Gray Goudy, Baltimore, Md. (Herbert Burgunder, Jr., Baltimore, Md., on brief), for appellee.

Before SOBELOFF and BOREMAN, Circuit Judges, and BUTLER, District Judge.

BOREMAN, Circuit Judge:

The instant appeal involves a question as to coverage of a policy of automobile liability insurance. In Fidelity & Casualty Company of New York v. Jackson, 297 F.2d 230 (4 Cir. 1961),[1] this court held that an insured's mother-in-law was his "relative" within the meaning of a provision in his automobile liability insurance policy which excluded coverage of any liability arising from his operation of an automobile owned by a "relative" who resided with him in "the same household." We must now consider and determine whether a similar construction should obtain with respect to an uncle-in-law of the insured driver under the same type of exclusionary provision. As was true in the *Jackson* case, there is no Maryland law to guide us.

The facts are undisputed. Mary Ann Vernatter obtained a judgment, to her own use and to the use of her minor children, in the amount of $50,600 against the estate of Jacob Linn Parks for the wrongful death of her husband as a result of an automobile collision. The vehicle which Parks was operating at the time of the accident was owned by San-

1. This case, frequently hereinafter mentioned, will be referred to as *"Jackson"* of "the *Jackson* case."

ford Osborne, the uncle of Parks' wife. Parks, his wife and Osborne resided together in the same household.

Osborne's car was covered against liability for death or injuries to the extent of $10,000 by a policy issued to him by the appellee, Allstate Insurance Company. Allstate has paid Mrs. Vernatter the full limit provided by that policy.

Parks was himself a "named insured" under a separate automobile liability policy which had been issued by Allstate upon a car owned by Parks' wife.[2] This policy, which provides coverage of $25,000 for the death of one person, is the subject of the instant action in which Mrs. Vernatter sued for a declaratory judgment to establish Allstate's liability to her and her minor children.

As previously indicated, the policy with which we are concerned, like the one in *Jackson,* specifically excepts from coverage any liability arising out of Parks' operation of an automobile owned by a "relative" who resides with him in the "same household."[3] The District Court granted summary judgment in favor of Allstate on the basis of this exclusion. We think the lower court's decision must be affirmed.

█ The chief argument presented by Mrs. Vernatter on this appeal is that the policy's definition of "relative" is ambiguous, and therefore the well-known rule, which has been adopted in Maryland,[4] that a document will be construed against the draftsman should have been applied against Allstate. The same contention provided the central issue in the *Jackson* case. While this court held under the facts and circumstances in *Jackson* that the word "relative" was not ambiguous with respect to whether it included a mother-in-law, the analysis contained in the opinion leaves little doubt that, as used in the exclusionary provision in question, "relative" also encompasses an insured's uncle-in-law.

In *Jackson,* it was observed that the word "relative" denotes a person connected to another by affinity as well as a person connected to one by consanguinity. The court stated, however, that:

"* * * merely because it has a broad meaning the word is not necessarily indefinite. The insurer was not writing inexactly when in its policy it withheld insurance from a policy holder while he was operating the car of a 'relative'. There was no reason the Company could not, if it chose, expand the exception so as to describe both blood and affined relations. And if that was the intent of the scrivener, the court is not free to give the exception a lesser import. For to narrow the exclusion by interpretation and confine 'relative' to those having a relationship by birth or descent merely because that would bring the insured and the tort claimants within the policy would, without more, be an unjustified reformation of the instrument. The rule of construction permitting the reading of a contract in strictness against the draftsman, here the Company, applies only when more than one intendment may appear in the document. No such ambiguity appears here, for the word is sharply qualified by other phrases in the policy and the purpose of the exception which—together with the cir-

2. The policy provided that the spouse of the named insured (Mrs. Parks) was also a named insured if a resident of the same household.

3. This exception results from the interplay of several policy provisions. Part 1 of that portion of the policy which is denominated "SECTION I—LIABILITY PROTECTION" restricts the coverage afforded the named insured to liabilities incurred with respect to the "owned or a non-owned automobile." (Since the "owned" automobile was, of course, the one belonging to Parks' wife, Allstate is liable under its contract only if Osborne's car was a "non-owned" automobile.) The policy defines a "non-owned" automobile as one "not owned by the named insured or any relative. * * *" In turn, the word "relative" is defined as "a relative of the named insured who is a resident of the same household."

4. See Ebert v. Millers Fire Ins. Co., 220 Md. 602, 611, 155 A.2d 484 (1959).

cumstances of this case—all clarify the noun."

Since the instant case involves the same exclusion which was in issue in *Jackson,* two of the three qualifying factors referred to in the last quoted sentence, *i. e.,* the purpose of the provision and the modifying phrases of the policy, are present here in indistinguishable form. The underlying purpose of the exclusion, which we consider to be by far the most important element in determining the meaning thereof, was delineated by Judge Bryan, writing for the court in *Jackson,* as follows:

"The obvious aim of the exception in the policy was to deny to an insured coverage through a single policy of other cars which presumably would be readily and regularly available to him because the owners were of his immediate household. Jackson's policy was already protecting the permissive use of his car by all the other members of the domestic circle. Avoidance of overloading of the policy, the Company evidently believed, could best be accomplished by bringing all of the other vehicles of the household under the exceptive proviso. *Plainly, then, 'relative' was employed in its widest concept.* The scheme of the insurance may be noticed in ascertaining the usage of the words in a policy." (Emphasis added.)

With respect to the second factor—modifying phrases—the instant exclusion is limited to those relatives who reside with the insured in the "same household." This same proviso was the only relevant limiting phrase contained in the policy in *Jackson.*[5] As noted there, this restriction severely straitens the scope of the exclusion.

It appears quite clear from Judge Bryan's opinion in *Jackson* that when he spoke of the circumstances of the case as being a third qualifying factor, he was referring to the nature of the relationship between the insured driver and the owner of the car. In this respect, the instant case is different from *Jackson.* The connection between an individual and his uncle-in-law is not as close as the connection between a person and his mother-in-law, either under the historical methods of computing degrees of relationship or in the eyes of the public. The appellant argues that the degree of affinity is the prime criterion in determining whether an affine is a "relative" under the policy and that an uncle-in-law is too far removed to be considered a "relative." She contends that the court attempted in *Jackson* to limit the construction of "relative" to include no affines who are more distantly removed than a mother-in-law. We do not agree with these contentions.

▬▬ Certainly, when the issue is whether "relative" was intended to include a certain type of relative by affinity that question cannot be resolved merely by pointing to the type of relationship involved. Insofar as the court spoke of the close degree of affinity present in *Jackson* as a factor delimiting the meaning of "relative," it must be remembered that the opinion did not undertake to determine the precise coverage of the term "relative." The court's concern there was whether that word included a mother-in-law. Certainly, an important consideration in determining the intent of a draftsman is the reasonableness of the particular construction which is in issue. In this limited respect, the nature of the relationship in question does assist in the interpretation of "relative." In view of the broad possible meaning of the word, it is surely quite reasonable to assume that the relationship of a mother-in-law, which is a very close relationship by affinity, was intended to be included within the meaning thereof. This is

5. While Judge Bryan, in stating the qualifying factors present in *Jackson,* speaks of modifying "phrases," it is clear from his opinion that he ascertains or regards only the one phrase referred to in the text as being pertinent. In summing up the factors delineating the word "relative," he states that its meaning is made clear by "the restrictive *phrase* 'of the same household.'" 297 F.2d at 233. (Emphasis added.) This is the only restrictive phrase to which he refers in his opinion.

what the court had in mind when it said that the meaning of "relative" was clarified by, *inter alia*, the circumstances present in *Jackson*. In other words, the closeness of the relationship in that case tended to strengthen the conclusion that a "relative" owned the car; the court in no way intimated that a lesser or more distant degree of relationship by affinity would not suffice to make one a "relative" within the meaning of the policy exclusion. This is amply borne out by Judge Bryan's previously quoted statement that, "Plainly, then, 'relative' was employed in its widest concept."

We think that a reasonable interpretation of "relative" must include an uncle-in-law. Certainly it is not uncommon for an uncle to reside with his nephew or niece and to permit that consanguine and his or her spouse the regular use of his car. It was, no doubt, the insurer's fear of this very type of situation, where a single policy may become overloaded by reason of the regular availability to insureds of vehicles for which additional premiums have not been paid, that prompted the exclusionary provision.[6] The insurer was not concerned with the degree of relationship. It obviously wanted to encompass within the terms of the exclusionary provision all relatives, whether by blood or marriage, whose car would be readily available to the insured by reason of their common residence and their familial relationship.

As pointed up in *Jackson*, the anomaly which would result from holding that Osborne was not Parks' "relative" is starkly apparent. Under such an interpretation of the exclusion, Parks would have been protected by the policy in question. Yet, had his wife been driving Osborne's car at the time of the accident, she, as a blood relative of Osborne, would clearly have been excluded from protection. That a car owner who resides with his niece and nephew-in-law would be more reluctant to lend his car to one than to the other seems most unlikely and cannot serve as a basis for distinguishing between them as "relatives" of the car owner within the meaning of the exclusion.

Indiana Lumbermens Mut. Ins. Co. v. Passalacqua, 30 Misc.2d 626, 211 N.Y.S. 2d 62 (Sup.Ct. Eq. Niagara County, 1961), relied upon heavily by the appellant is clearly distinguishable since the owner of the car did not share a common residence with the insured.

Affirmed.

---

6. The appellant's argument that there could be no overloading of the policy involved here because Osborne's car, the other passenger vehicle in the household, was separately protected by another policy is plainly without merit. The feared overloading is not that one car may be covered by more than one policy, but rather that one policy may have to cover more than one car without the rate adjustment which would be required if both were owned by the insured.