Brittany FROST, by her Guardian ad Litem, Michael S. Anderson, and Tina Frost, Plaintiffs-Appellants,

v.

Doreen WHITBECK, Defendant,

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant-Respondent.†

Court of Appeals

*No. 01–0327. Submitted on briefs July 9, 2001.—Decided November 1, 2001.*

2001 WI App 289

(Also reported in 638 N.W.2d 325.)

† Petition to review granted 3-19-02.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Michael S. Anderson* of *Axley Brynelson, LLP* of Madison.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Virginia L. Newcomb* and *Paul F. Graves* of *Borgelt, Powell, Peterson & Frauen, S.C.* of Madison.

Before Vergeront, P.J., Dykman and Roggensack, JJ.

¶ 1. ROGGENSACK, J.   Tina Frost and her daughter, Brittany Frost, sued Doreen Whitbeck and Doreen's insurer, American Family Mutual Insurance Company, for damages related to dog bites sustained by

Brittany while she and her mother were staying in Doreen's home. The circuit court granted summary judgment dismissing all claims against American Family, after concluding that the Frosts' claims came within the policy's "intra-insured" exclusion for bodily injury to a resident relative. We conclude that the term "relative," used in the policy as an exclusion from coverage, is ambiguous and therefore, as construed against American Family, it does not exclude the Frosts' claims. Accordingly, the judgment and order of the circuit court are reversed, and we remand for further proceedings.

## BACKGROUND

¶ 2.  Tina and Brittany came to Wisconsin in May 1996 after Tina was divorced from her husband in Kentucky. Tina arranged to stay with Doreen in a home Doreen rented. The women, who were friends, had known each other since their teenage years. Apparently, Doreen's mother told them they were "shirttail" relatives. The supposed connection is that their great grandfathers, John Van Ert and Barney Van Ert, were brothers, and therefore, Doreen and Tina share a common great, great grandfather.

¶ 3.  The intended duration of Tina's and Brittany's stay with Doreen was uncertain. Although Tina accepted a full-time job in Wisconsin and Brittany enrolled in a Wisconsin school in the fall of 1996, some of their belongings remained in Kentucky. In addition, Tina remained in contact with her ex-husband and told him that their stay in Wisconsin was not intended to be permanent. Doreen paid all of the rent while Tina and Brittany were living in the house, but Tina paid some of the utility bills.

¶ 4.  Brittany returned to live with her father in Kentucky for the month of August and then perma-

nently returned to Kentucky after being bitten by Doreen's dog in November 1996. This was the second time that Brittany had been bitten, and she suffered injuries on each occasion. In December of 1996, Tina returned to Kentucky, and two years later the Frosts sued for the dog bites, naming Doreen and her homeowner's insurer, American Family, as defendants.

¶ 5. American Family moved for summary judgment on coverage, arguing that Brittany was an "insured" for purposes of a bodily injury claim and that Doreen's policy contains an express exclusion for intra-insured claims. The policy provides in relevant part:

DEFINITIONS

. . . .

5. **Insured**

    a. **Insured** means **you** and, if residents of **your** household:

    (1) **your** relatives; and

    (2) any other person under the age of 21 in **your** care or in the care of **your** resident relatives.

. . . .

EXCLUSIONS – SECTION II

. . . ..

11. **Intra-insured Suits**. **We** will not cover **bodily injury** to any **insured**.

(Emphasis in original.) The circuit court granted American Family's motion for summary judgment, concluding that the Frosts' claims came within the exclu-

210

sion. The Frosts appeal, contending that Tina and Brittany were not resident relatives under Doreen's policy.

## DISCUSSION

### Standard of Review.

¶ 6.   We review summary judgment decisions *de novo,* applying the same standards employed by the circuit court. *Guenther v. City of Onalaska,* 223 Wis. 2d 206, 210, 588 N.W.2d 375, 376 (Ct. App. 1998). We first examine the complaint to determine whether it states a claim, and then we review the answer to determine whether it joins a material issue of fact or law. *Smith v. Dodgeville Mut. Ins. Co.,* 212 Wis. 2d 226, 232, 568 N.W.2d 31, 34 (Ct. App. 1997). If we conclude that the complaint and answer are sufficient to join issue, we examine the moving party's affidavits to determine whether they establish a *prima facie* case for summary judgment. *Id.* at 232–33, 568 N.W.2d at 34. If they do, we look to the opposing party's affidavits to determine whether there are any material facts in dispute that entitle the opposing party to a trial. *Id.*

¶ 7.   Interpretation of a written insurance policy is a question of law, which we review without deference to the decision of the circuit court. *Guenther,* 223 Wis. 2d at 210, 588 N.W.2d at 377.

### Resident-Relative Exclusion.

¶ 8.   The dispute between the parties centers on the meaning of the terms "resident" and "relative" as used in Doreen's homeowner's policy. Tina and Brittany

211

present three contentions: (1) there are material facts in dispute relevant to whether they were "residents" of Doreen's household when the injuries occurred; (2) American Family failed to produce admissible evidence sufficient to support a *prima facie* showing that Doreen is a relative of either Tina or Brittany; and (3) the policy's use of "relative" is ambiguous in regard to persons so remotely connected, and therefore, neither Tina nor Brittany comes within the policy's resident-relative exclusion. We base our decision on our agreement with their third contention.[1]

¶ 9. The interpretation of an insurance policy is governed by the same rules of construction that apply to other contracts. *Peace v. Northwestern Nat'l Ins. Co.*, 228 Wis. 2d 106, 120–21, 596 N.W.2d 429, 435–36 (1999). When the terms of an insurance policy are unambiguous, we will not rewrite the policy by construction. *Taylor v. Greatway Ins. Co.*, 2001 WI 93, ¶ 10, 245 Wis. 2d 134, 628 N.W.2d 916. However, if words or phrases in a policy are susceptible to more than one reasonable construction, they are ambiguous, *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 811, 456 N.W.2d 597, 598–99 (1990), and ambiguous terms in exclusion clauses are narrowly construed against the insurer because the insurer is better situated to elimi-

---

[1] In this opinion, we do not decide whether there are issues of material fact which would also preclude summary judgment based on the Frosts' first or second contention, as the issue we address is dispositive of coverage for bodily injury. *Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983) (when one issue decides the question presented, we may choose not to address other issues also presented for review).

nate ambiguity. *Peace*, 228 Wis. 2d at 121, 596 N.W.2d at 436; *Guenther*, 223 Wis. 2d at 210–11, 588 N.W.2d at 377.

¶ 10. American Family contends that the term "relative" is unambiguous because its common meaning is a person related by blood or marriage to another. It contends that any reasonable insured would have this understanding of the term. American Family also argues that the common definition does not create an unreasonably broad exclusion, even when taken to its literal extreme of including absolutely anyone who has any relationship by blood or marriage no matter how many generations ago that relationship existed, because the exclusion will apply to a very distant relative only if that distant relative is also a resident of the policyholder's household. To be persuaded by American Family's argument, we would have to conclude that a reasonable policyholder would understand from reading the policy that by agreeing to host a distant relative in her home she would reduce the coverage available to her if she were held liable for bodily injury to that person, while such coverage would not be affected if she hosted a very close friend in her home under the same circumstances.

¶ 11. On the other hand, Tina and Brittany contend that, at some point, the fact that one shares a distant ancestor with another person becomes irrelevant to decisions that reasonable people make about their daily lives, including decisions about homeowner's insurance. They argue that a reasonable insured would not interpret "relative," as used in a resident-relative exclusion, to presumptively include *all* those persons with whom they share any remote ancestor by blood or by marriage no matter how many generations ago that

occurred. Instead, they contend that a reasonable insured would understand "relative" to have a more restricted meaning. The Frosts do not indicate where a reasonable insured would draw the line,[2] but they assert that the line falls somewhere short of persons who share only a great, great grandparent and who are separated, as the circuit court noted in this case, by ten degrees of kinship.

¶ 12.   In construing the insurance policy, we note that it provides differing forms of coverage. For example, Section I generally[3] provides coverage for first-party claims for property loss, with some exclusions from coverage for certain causes and types of loss. However, Section II of the policy provides coverage only for third-party claims,[4] with the intra-insured suit exclusion as the mechanism used to accomplish this limitation.

¶ 13.   In limiting Section II coverage to third-party claims, the policy does not exclude claims for bodily injury brought by all relatives, only those who are also residents of the policyholder's household. (Presumably, Doreen's mother could sue her for bodily

[2] The Frosts cite several statutory definitions of "relative," pointing out in particular those relatives who are entitled to take at intestacy. *See* Wis. Stat. § 852.01 (1999–2000). The Frosts have given us no reason to conclude that policyholders look to the intestacy statutes, or to any other statute, to define contractual terms. We conclude that statutory definitions are not relevant to the coverage question presented by this insurance contract.

[3] There is limited coverage for damage to the property of a house guest which damage occurs while the property is on the premises of the policyholder.

[4] Section II provides coverage for personal liability (Coverage D) and medical expenses (Coverage E).

214

injury if she lived in a house down the street, and the policy would potentially provide coverage.) Additionally, the policy does not exclude claims for bodily injury brought by all residents of the household, only those who are also relatives. (Presumably, Doreen's best friend could sue her for bodily injury even though they lived together, and the policy would potentially provide coverage.) However, when one recognizes that the purpose of the intra-insured suit exclusion is to preclude first-party claims, the closeness of the resident-relative connection necessary to accomplish this purpose becomes apparent. The degree of consanguinity or affinity must be such that a reasonable policyholder would understand that co-habitation would reduce the coverage available to her if she were held liable for bodily injury to that relative.

¶ 14. Stated another way, by excluding the claims of only those resident relatives who are closely enough connected by blood or marriage to the policyholder that their relationships are likely to be considered in the policyholder's personal decisions, such as contracting for homeowner's insurance, claims that are essentially first-party claims are precluded. Additionally, defining "relative" in an unlimited manner does not further the purpose of the intra-insured suit exclusion because excluding coverage for the claims of remote resident relatives would exclude *third-party* claims, a result inconsistent with the provisions of Section II.[5] Further-

[5] We do note that while the policy provides no exclusion for bodily injury damages under Section II D for a resident who is not also a relative, there is a potential exclusion for anyone except domestic employees "regularly residing on any part of the insured premises," for the $1,000 of medical expense coverage provided under Section II E. No party brings this condition

more, we note that if Tina[6] were to be construed as a resident-relative insured under the policy, American Family would have exposure for third-party liability claims against Doreen, Tina and any number of shirt-tail relatives who may stay with Doreen. We question whether this level of consanguinity is what American Family bargained for in selling $100,000 of coverage for liability claims against *any* insured.

¶ 15.   And finally, applying American Family's "no-matter-how-remote" construction of "relative" could create unexpected results from the perspective of an insured. For example, under American Family's limit-less definition of "relative," the exclusion would apply even if the insured and another resident of the house-hold had no idea that they were distant cousins and the insurer discovered a familial link through independent investigation. Given this possibility and the exclusion's purpose of limiting Section II coverage to third-party claims, we conclude that a reasonable policyholder would understand the resident-relative exclusion to be inapplicable in instances where the asserted degree of kinship, even if provable, is so remote that most people are either unlikely to know of the asserted relationship

of the policy to our attention, so we assume medical expenses under Section II E are not at issue in this lawsuit.

[6] Doreen's and Tina's degree of kinship is relevant because the policy's definition of "insured" includes children in the care of a resident relative. Brittany Frost's own blood-line link to Doreen, although more remote, is also relevant because Brittany is the person who directly suffered the bodily injury. However, as we conclude that the kinship shared between Doreen and Tina is not sufficient to invoke the policy's resident-relative exclusion, we also conclude that Brittany's link to Doreen is likewise too remote.

or unlikely to consider the relationship in matters such as contracting for homeowner's insurance. *See Pamperin v. Milwaukee Mut. Ins. Co.*, 55 Wis. 2d 27, 36–37, 197 N.W.2d 783, 788–89 (1972) (concluding that whether the insured would consider the relationship in contracting for automobile insurance is one factor to consider in determining whether a person is a resident of the household).

¶ 16. American Family cites a number of cases from other jurisdictions where courts have determined that the term "relative" unambiguously applied, or did not apply, to the facts presented. For example, in *Fidelity & Cas. Co. of New York v. Jackson*, 297 F.2d 230, 231–32 (4th Cir. 1961), and *Vernatter v. Allstate Ins. Co.*, 362 F.2d 403, 404 (4th Cir. 1966), the Fourth Circuit Court of Appeals noted that the term generally refers to a person connected by either blood or marriage, but held that the meaning can vary by context. Then, examining the underlying purpose of the exclusion at issue (to prevent the purchase of one policy of insurance to cover many cars), the specific policy language and the relationship of the relevant parties, the court concluded that "relative," as used in the policies, was not ambiguous. *See Jackson*, 297 F.2d at 233; *Vernatter*, 362 F.2d at 405–06. If the same facts were presented here, we would not disagree. *Jackson* involved a question of whether a mother-in-law was a relative, while *Vernatter* addressed the relationship between a defendant and his spouse's insured uncle. Both cases also involved exclusions in automobile insurance policies. Considering the purpose of the exclusions and the very close relationships by affinity involved in those cases, both *Jackson* and *Vernatter* could be resolved under the rule that there is no ambiguity where the court concludes that "only one meaning

applies in the context and comports with the parties' objectively reasonable expectations." *Sprangers v. Greatway Ins. Co.*, 182 Wis. 2d 521, 537, 514 N.W.2d 1, 7 (1994) (citing *United States Fire Ins. Co. v. Ace Baking Co.*, 164 Wis. 2d 499, 503–04, 476 N.W.2d 280, 282 (Ct. App. 1991)).

¶ 17.   Here, it is not true that under any reasonable construction of "relative" a distant cousin was clearly intended to be included as an insured. As explained above, there are at least two reasonable interpretations of "relative" in this case, and each interpretation leads to a different result. The distant relationship in question and the purpose of the exclusion at issue both serve to distinguish this case from *Jackson* and *Vernatter*. Additionally, we have considered, but do not find persuasive, the other cases cited by American Family. *See, e.g., Groves v. State Farm Life & Cas. Co.*, 829 P.2d 1237 (Ariz. Ct. App. 1992) (concluding that an ex-son-in-law was not a resident relative under a homeowner's insurance policy).[7] Accordingly, because "relative" is not defined in the policy and is susceptible to more than one reasonable construction,

---

[7] American Family cites *Groves v. State Farm Life & Cas. Co.*, 829 P.2d 1237 (Ariz. Ct. App. 1992), as well as several other cases in an attempt to show repeated recognition that the plain and common meaning of the term "relative" encompasses "a person related by blood or affinity." We will assume for the sake of argument that the common definition of "relative" does encompass persons related by blood or affinity. However, the pertinent question in this case is whether a reasonable insured in the position of Doreen would understand the term to encompass *any person no matter how remote the relationship*. This, in practical terms, is the construction that American Family urges. As explained above, we conclude that a reasonable person in the position of the insured would not have this understanding.

we construe it narrowly and in favor of affording coverage for the Frosts' claims.

## CONCLUSION

¶ 18.   We conclude that the term "relative," used in the policy as an exclusion from coverage, is ambiguous and therefore, as construed against American Family, it does not exclude the Frosts' claims. Accordingly, the judgment and order of the circuit court are reversed, and we remand for further proceedings.

*By the Court.*—Judgment and order reversed and cause remanded.