COURT OF APPEALS
DECISION
DATED AND FILED

February 9, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2019AP1633**

STATE OF WISCONSIN

Cir. Ct. No.  2019CV43

IN COURT OF APPEALS
DISTRICT III

RED ROCK GRANITE, INC.,

    PLAINTIFF-APPELLANT,

  V.

KAFKA PROPERTIES, LLC,

    DEFENDANT-RESPONDENT.

---

APPEAL from a judgment of the circuit court for Marathon County: MICHAEL K. MORAN, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Red Rock Granite, Inc., (Red Rock) appeals from a summary judgment that dismissed its claim seeking enforcement of a restrictive

covenant against Kafka Properties, LLC. We conclude that Red Rock's materials filed in opposition to summary judgment failed, as a matter of law, to establish a violation of the restrictive covenant. Accordingly, we affirm.

## BACKGROUND

¶2 The restrictive covenant at issue in this case was agreed upon and recorded by predecessors in interest to the current parties. The covenant provides, in relevant part, that the owner of the property subject to the covenant agrees "not to mine, excavate, sever, sell or remove nonmetallic minerals upon, within or under the surface" of the property.

¶3 In 2018, Kafka Properties, LLC, purchased a portion of the property subject to the restrictive covenant, referred to as Lot One. A related entity, Kafka Granite, LLC, (Kafka) thereafter took possession of Lot One and constructed a mineral fabrication facility upon it. At the facility, Kafka processes large blocks of granite, marble and quartz quarried off-site into finished products, such as stone veneer, for use in building construction projects. Kafka stores the finished products on Lot One for some time before transportation to other locations for distribution or sale. Both finished and unfinished rocks stored outside on Lot One are visible from an adjacent state highway.

¶4 Kafka does not conduct any ongoing mining or quarrying activities on Lot One. However, during the construction of the facility and an adjacent parking lot, Kafka excavated a substantial amount of dirt containing nonmetallic minerals from Lot One and transported the excavated dirt to a nearby property that it also owns. Kafka crushes and sells rock on that nearby property.

¶5      Red Rock sued Kafka alleging an ongoing violation of the restrictive covenant.  Kafka moved for summary judgment supported by an affidavit denying that it was engaging in any of the activities prohibited by the restrictive covenant.  Red Rock did not conduct any discovery, but it filed affidavits opposing the motion.  In its affidavits, Red Rock asserted that: (1) the intent of the restrictive covenant was to "prohibit all commercial activity on the Restricted Property that would adversely impact … [Red Rock] in any way"; (2) splitting larger rocks into smaller pieces by a mechanical means is an "integral part of mining and selling rock to the general public"; and (3) the only purpose for displaying finished and unfinished rock to the public along the highway is to advertise products as part of the sales process.

¶6      The circuit court rejected Red Rock's proposed construction of the restrictive covenant as prohibiting "all commercial activity" adversely impacting Red Rock in any way, characterizing it as an overly broad expansion of the specifically enumerated prohibited activities.  The court concluded that none of the activities Kafka was engaged in constituted any of those enumerated activities.  It explained:

> Mining is the process by which rock is removed from the earth.  Selling is the transaction by which ownership of the rock is transferred.  Finishing the rock can only happen after the rock has been mined, and it will generally happen before the rock has been sold.  (In any event, the finishing process has no effect on ownership.)  Likewise, "selling" cannot reasonably be viewed as including the act of storing or displaying rock on the property.  Selling refers to the transfer of ownership, not the steps that might precede such a transfer, including advertising or display.
>
>  ….
>
> [T]he term "sever" must, in [the context of the list in which it appears] refer to severing minerals from the property.

3

¶7    The circuit court further determined that to the extent the term "sever" was subject to an alternative, albeit "strained," reading proposed by Red Rock that would include severing minerals from themselves, the restrictive covenant was ambiguous and unenforceable. The court then granted summary judgment in Kafka's favor and dismissed Red Rock's claim.

## DISCUSSION

¶8    This court reviews a summary judgment decision de novo, using the same methodology as the circuit court. ***Water Well Sols. Serv. Grp. v. Consolidated Ins. Co.***, 2016 WI 54, ¶11, 369 Wis. 2d 607, 881 N.W.2d 285. We examine the parties' submissions in support of and in opposition to the summary judgment motion to determine whether the movant has made a prima facie case for judgment and, if so, whether there are any material facts in dispute that would entitle the opposing party to a trial. ***Frost v. Whitbeck***, 2001 WI App 289, ¶6, 249 Wis. 2d 206, 638 N.W.2d 325; *see also* WIS. STAT. § 802.08(2) (2017-18).[1]

¶9    When a motion for summary judgment is made and supported with appropriate evidentiary materials, "an adverse party may not rest upon the mere allegations or denials of the pleadings." WIS. STAT. § 802.08(3). If the adverse party does not respond with affidavits made upon personal knowledge, answers to interrogatories, and other documents or materials that would be admissible in evidence, summary judgment shall be entered against such party. ***Id.***

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

4

¶10     Generally speaking, "[c]ourts use the rules of contract interpretation to ascertain the meaning of restrictive covenants." *Solowicz v. Forward Geneva Nat'l*, 2009 WI App 9, ¶42, 316 Wis. 2d 211, 763 N.W.2d 828 (2008), *aff'd*, 2010 WI 20, 323 Wis. 2d 556, 780 N.W.2d 111. When the meaning of a contract can be determined from its face with "reasonable certainty," a court need not consider evidence beyond the contract and should enforce the clear language itself. *Id.* Deed restrictions, however, are generally disfavored by Wisconsin law. Public policy therefore requires that the language in a restrictive covenant "be strictly construed to favor unencumbered and free use of property." *Forshee v. Neuschwander*, 2018 WI 62, ¶16, 381 Wis. 2d 757, 914 N.W.2d 643 (citation omitted).

¶11     Here, both parties contend that the terms of the restrictive covenant are clear and unambiguous, even though they each advance different interpretations of the covenant and its application to the facts of this case. Red Rock asserts that the plain purpose of the covenant was to protect it from commercial activity on that land that would adversely affect its economic interests. Red Rock then argues that Kafka violated the covenant by excavating and removing dirt containing nonmetallic minerals from Lot One incident to the construction of the fabrication facility and then selling the excavated minerals from another location. Red Rock further argues that Kafka continues to violate the covenant by displaying finished rocks outside of the facility in order to advertise them as part of the "selling process."

¶12     Kafka asserts that the plain purpose of the covenant was to prohibit quarrying activity on Lot One. It argues that removing dirt incident to construction was not quarrying activity and, therefore, it did not constitute the excavation and removal of minerals. Kafka further contends that the covenant

5

does not prohibit it from selling the incidentally excavated minerals from another site, or from selling minerals quarried off-site on Lot One.

¶13     We conclude that the terms of the restrictive covenant are unambiguous, although we do not fully agree with the interpretations advanced by either party.   In particular, Red Rock's assertion that the covenant prohibits commercial activity on the land that would harm its economic interests is too broad because the covenant makes no mention of competition and does not define Red Rock's business.   Conversely, Kafka's assertion that the covenant restricts only quarrying activity is too narrow, because mining and excavation may be broader than quarrying, and selling may occur without quarrying.

¶14     The *noscitur a sociis* canon of construction provides that "words grouped in a list should be given related meaning." ***Third Nat'l Bank in Nashville v. Impac Ltd., Inc.***, 432 U.S. 312, 322 (1977).   In relation to "nonmetallic minerals upon, within or under the surface" of Lot One, the list of terms "mine, excavate, sever, sell or remove" plainly refer both to physically separating any nonmetallic minerals originating on the property from the property and to selling any minerals originating on the property.

¶15     Here, the parties agree that merely removing dirt from Lot One incident to construction would not violate the covenant.   Red Rock maintains, however, that selling minerals contained in the excavated dirt violated the covenant.  The problem with Red Rock's contention is that there is nothing in the summary judgment materials evidencing that Kafka actually sold any of the excavated minerals.

¶16     Red Rock's affidavits averred generally that Kafka made sales from the property to which the excavated dirt had been transferred, but they did not cite

a single sale that involved minerals originating on Lot One. Red Rock's general assertion was insufficient to rebut Kafka's more specific assertion that it processed only rocks quarried off-site in its facility on Lot One before sending them for sale on its other property. Moreover, even if there was a basis to conclude that Kafka violated the restrictive covenant, Red Rock's general assertion did not provide any basis for a damages award.

¶17 Red Rock now claims that it is entitled to conduct discovery in order to determine the amount of nonmetallic minerals contained in the excavated dirt sold, and its sale price. However, our review of the circuit court's decision is based upon what was before the court at the time its decision was made. Red Rock could have asked the court for additional time to conduct discovery before proceeding on the summary judgment motion. *See* WIS. STAT. § 802.08(4). It did not.

¶18 Next, Red Rock argues that selling is a process that involves more than the transfer of ownership—it necessarily includes offering products for sale. Even if there is some truth in that statement, we would distinguish between sales activities involving specific customers and advertising to the general public. There is nothing in the summary judgment materials to suggest that Kafka's employees ever brought or allowed potential customers onto the property to view the piles of rock stored there. To the extent that the mere visibility of its products could be considered a form of advertising, we agree with Kafka that such advertising did not constitute "selling" in violation of the covenant, particularly given the disfavor with which restrictive covenants are viewed under Wisconsin law. We conclude that the circuit court properly granted summary judgment in Kafka's favor.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.