**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**February 23, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2019AP1658**

**STATE OF WISCONSIN**

Cir. Ct. No.  2018CV1089

**IN COURT OF APPEALS**
**DISTRICT III**

LNV CORPORATION,

   PLAINTIFF-RESPONDENT,

 V.

TAMMY S. STUEBER A/K/A TAMMY S. BRADWELL,

   DEFENDANT-APPELLANT,

CAP SERVICES, INC.,

   DEFENDANT.

APPEAL from a judgment of the circuit court for Outagamie County:  MITCHELL J. METROPULOS, Judge.  *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Tammy Stueber appeals from a summary judgment of foreclosure granted in favor of LNV Corporation  Stueber contends LNV failed to establish a prima facie case regarding its interest in the mortgage note for the property at issue and that there were several material issues of fact in dispute regarding the enforceability of the note.  We conclude Stueber forfeited the issues she attempts to raise on appeal by failing to timely raise them in the circuit court.  We therefore affirm.

## BACKGROUND

¶2    LNV filed a foreclosure action against Stueber, alleging that it had been assigned an $82,000 promissory note and mortgage executed by Stueber with the originating lender (Aames Funding Corporation), and that Stueber had defaulted on the note by failing to make payment when due.  LNV attached to the complaint copies of the promissory note and mortgage and a series of assignments and alonges.

¶3    Stueber filed an answer admitting that she had executed the note and mortgage, but denying that she had failed to comply with the terms of the note and denying specific knowledge as to how much was owed on the note.  The answer raised affirmative defenses of failure to state a claim, failure to mitigate damages, lack of personal jurisdiction due to lack of personal service, laches, and unclean hands, while reserving the right to raise additional affirmative defenses that might arise during discovery.

¶4    LNV moved for summary judgment.  In support of its motion, LNV submitted an affidavit from an "authorized signer" of LNV who had reviewed the records of the loan account that were received by LNV from a third-party servicer and integrated into LNV's own business records.  The affiant averred that LNV

was the current holder of the $82,000 promissory note and mortgage and that Stueber had failed to make required payments on the note, had failed to cure the default, and owed $70,528.68 on the note taking into account the acceleration of the loan and other fees.

¶5      In response, Stueber filed an affidavit averring that she was not informed about, and did not agree to, the terms of the promissory note and mortgage at issue, which refinanced a prior $45,000 mortgage with Aames to a new amount of $82,000.  Rather, Stueber claimed it was her understanding that the documents she signed at closing related solely to a supplemental $31,800 loan from CAP Services, Inc., to repair damage caused by a house fire, separate from her prior mortgage.  Thereafter, Stueber believed she was making a combined payment to a third-party servicer on two loans—the original $45,000 Aames note and the $31,800 CAP note.  Stueber's response to requests for admissions and her memorandum in opposition to summary judgment acknowledged that after July 2018, she had failed to make payments on either the original $45,000 Aames note (assuming it still existed) or the refinanced $82,000 note now held by LNV.

¶6      At a hearing on the summary judgment motion, the circuit court noted that Stueber acknowledged it was her signature on the refinanced note held by LNV and that the note plainly indicated that it was in the amount of $82,000. The court concluded the summary judgment documents established that all of the material allegations of the complaint were true, and it issued a judgment of foreclosure.

## DISCUSSION

¶7      This court reviews a summary judgment decision de novo, using the same methodology as the circuit court.  ***Water Well Sols. Serv. Grp. v.***

3

*Consolidated Ins. Co.*, 2016 WI 54, ¶11, 369 Wis. 2d 607, 881 N.W.2d 285. We examine the parties' submissions in support of and in opposition to the summary judgment motion to determine whether the movant has made a prima facie case for judgment and, if so, whether there are any material facts in dispute that would entitle the opposing party to a trial. *Frost v. Whitbeck*, 2001 WI App 289, ¶6, 249 Wis. 2d 206, 638 N.W.2d 325; *see also* WIS. STAT. § 802.08(2) (2017-18).[1]

¶8      When a motion for summary judgment is made and supported with appropriate evidentiary materials, "an adverse party may not rest upon the mere allegations or denials of the pleadings." WIS. STAT. § 802.08(3). If the adverse party does not respond with affidavits made upon personal knowledge, answers to interrogatories, and other documents or materials that would be admissible in evidence, summary judgment shall be entered against that party. *Id.*

¶9      Stueber raises two issues in her initial appellant's brief. First, she contends there were material facts in dispute regarding two affirmative defenses that could have supported setoffs to the foreclosure judgment. Specifically, she alleges: (1) violations by the originating lender of disclosure provisions in the Real Estate Settlement Procedures Act and the Truth in Lending Act, subject to a statutory penalty of $4,000 plus costs and attorney fees; and (2) a failure by the originating lender to provide her with $6,556.32 in cash-out funds at closing. Next, Stueber claims the affidavit of LNV's "authorized signer" was insufficient on its face to explain the affiant's relationship to LNV or to the third-party loan

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

servicer, or how the third-party loan servicer's records came to be integrated into LNV's own business records.

¶10    Stueber did not raise either of these issues in her circuit court memorandum in opposition to summary judgment. Nor did her answer to the complaint or her summary judgment affidavit make factual assertions that the originating lender had failed to make statutorily required disclosures or to provide cash-out funds at closing. This court will generally not consider issues raised for the first time on appeal, so that we do not "blindside trial courts with reversals based on theories which did not originate in their forum." *Schonscheck v. Paccar, Inc.,* 2003 WI App 79, ¶¶10-11, 261 Wis. 2d 769, 661 N.W.2d 476 (citation omitted). "A party must raise an issue with sufficient prominence such that the trial court understands that it is called upon to make a ruling." *Schwittay v. Sheboygan Falls Mut. Ins. Co.*, 2001 WI App 140, ¶16 n.3, 246 Wis. 2d 385, 630 N.W.2d 772. We conclude that Stueber has forfeited any argument that she was entitled to a trial on potential affirmative defenses arising from the originating lender's alleged failures to provide disclosures and cash-out funds, or that the "authorized signer" of LNV's affidavit failed to provide an adequate foundation for his assertions.

¶11    In her reply brief, Stueber makes an additional argument that the summary judgment materials show she stopped making mortgage payments when she came to question "where the monies were going to and for what." Stueber contends that her own alleged misunderstandings about the cumulative total amount of the refinanced LNV note and the CAP note and to which loan her payments were being applied create a material issue of fact as to how much money was owed on the LNV note. We conclude, however, that any such misunderstandings on Stueber's part were immaterial to the findings necessary to

support foreclosure—what payments were in fact made on the LNV note or its remaining balance.

¶12 Stueber did not dispute the specific dates or amounts of any of the payments that the summary judgment materials submitted by LNV showed Stueber had made to third-party loan servicers, and she did not assert that she had made any additional payments. Her general denials of knowledge as to how the loan proceeds were disbursed or how her payments were applied to the loan were insufficient to counter the assertions in LNV's summary judgment materials—supported by copies of loan servicing records—as to the amounts of Stueber's payments, and when and to whom those payments were made. Moreover, Stueber's submissions did not create a triable issue regarding her failure to make payments on the loan after July 2018.

¶13 We conclude the summary judgment materials did not establish any material factual dispute warranting trial. We therefore affirm the foreclosure judgment.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.